2021 PA Super 11

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| BRANDON K. SUMMERS, | : | |
| | : | |
| Appellant | : | No. 1966 EDA 2019 |

Appeal from the Judgment of Sentence Entered May 17, 2019
in the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0005890-2004

BEFORE:   LAZARUS, J., KING, J. and STRASSBURGER, J.[*]

OPINION BY STRASSBURGER, J.:                    Filed: January 21, 2021

Brandon K. Summers (Appellant) appeals from the May 17, 2019 judgment of sentence for second-degree murder, imposed following a resentencing hearing pursuant to **Miller v. Alabama**, 567 U.S. 460 (2012).[1] We affirm.

We provide the following background.  On May 3, 2003, when he was 17 years and 3 months old, Appellant was involved in the shooting death of John Lacey, a Widener University student, which occurred during the commission of a robbery outside of a tavern adjacent to the University.  On December 8, 2005, a jury found Appellant guilty of second-degree murder

____

[1] In **Miller**, the United States Supreme Court held that a mandatory sentence of life imprisonment without the possibility of parole (LWOP) for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition of cruel and unusual punishments.  567 U.S. at 465.

[*] Retired Senior Judge assigned to the Superior Court.

and robbery. On January 23, 2006, Appellant was sentenced to a mandatory term of LWOP for his second-degree murder conviction.[2]

Appellant filed a post-sentence motion, which the trial court denied. On June 21, 2006, Appellant filed a direct appeal.[3] This Court affirmed Appellant's judgment of sentence, and on February 27, 2009, our Supreme Court denied Appellant's petition for allowance of appeal. *Commonwealth v. Summers*, 959 A.2d 974 (Pa. Super. 2008) (unpublished memorandum), *appeal denied*, 966 A.2d 571 (Pa. 2009).

On April 24, 2009, Appellant timely filed *pro se* a PCRA petition. Counsel was appointed and ultimately filed a *Turner/Finley*[4] no-merit letter. The PCRA court dismissed Appellant's petition on March 30, 2010. Appellant did not appeal that dismissal. Instead, on June 14, 2010,

---

[2] For sentencing purposes, the trial court merged Appellant's convictions for robbery and second-degree murder.

[3] On February 21, 2007, Appellant *pro se* filed a petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. On April 9, 2007, the PCRA court dismissed that petition, concluding it was prematurely filed because Appellant's direct appeal was still pending. *See Commonwealth v. Leslie*, 757 A.2d 984, 985 (Pa. Super. 2000) ("A PCRA petition may only be filed after an appellant has waived or exhausted his direct appeal rights."); *see also* 42 Pa.C.S.A. § 9545(b) (stating that a PCRA petition "shall be filed within one year of the date the judgment becomes final" and "a judgment of sentence becomes final at the conclusion of direct review[.]").

[4] *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988) and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

Appellant *pro se* filed another PCRA petition, which was dismissed as untimely filed on November 19, 2010.

On July 23, 2012, Appellant *pro se* filed a fourth PCRA petition, claiming that his sentence was unconstitutional under **Miller**.[5] The PCRA court appointed counsel and issued an order on August 23, 2013, holding the petition in abeyance pending the outcome of **Commonwealth v. Cunningham**, 81 A.3d 1 (Pa. 2013), as the **Cunningham** Court was to determine whether **Miller** was retroactively applicable to post-conviction collateral review petitioners. On October 30, 2013, the **Cunningham** Court determined **Miller** was not retroactively applicable. As a result, the PCRA court vacated its order holding the petition in abeyance, and ordered counsel to file an amended petition or a **Turner/Finley** no-merit letter. Accordingly, relying on **Cunningham**, PCRA counsel filed a no-merit letter, and the PCRA court permitted counsel to withdraw from the case. On April 14, 2015, the PCRA court dismissed Appellant's 2012 petition as untimely filed.

Appellant timely appealed to this Court, claiming that **Miller** applied retroactively to his case. While his appeal was pending, the United States Supreme Court held that **Miller** applied retroactively to cases on collateral review, essentially overruling **Cunningham**. **Montgomery v. Louisiana**,

---

[5] Appellant's petition was filed within 60 days of the issuance of **Miller**.

___ U.S. ___, 136 S.Ct. 718 (2016). Following that decision, this Court reversed the PCRA court's order, vacated Appellant's LWOP sentence, and remanded the matter for further proceedings. ***Commonwealth v. Summers***, 144 A.3d 194 (Pa. Super. 2016) (unpublished memorandum).

The resentencing court held a hearing on February 13, 2019. On May 17, 2019, the resentencing court sentenced Appellant to 40 years to life imprisonment. Appellant timely filed a post-sentence motion for reconsideration of sentence, wherein he raised several claims, including a claim challenging the discretionary aspects of his sentence and a claim that the resentencing court imposed an impermissible *de facto* life sentence. The court denied his post-sentence motion on June 5, 2019.

Appellant timely filed a notice of appeal.[6] Appellant's appeal challenges the legality and discretionary aspects of his sentence. Appellant's Brief at 5.

We begin by reviewing Appellant's challenges to the discretionary aspects of his sentence.

> An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:

---

[6] Both Appellant and the resentencing court complied with Pa.R.A.P. 1925.

- 4 -

(1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

*Commonwealth v. DiClaudio*, 210 A.3d 1070, 1075 (Pa. Super. 2019), *quoting* *Commonwealth v. Samuel*, 102 A.3d 1001, 1006-07 (Pa. Super. 2014).

Appellant has satisfied the first three requirements: he timely filed a notice of appeal, preserved the issue in a post-sentence motion, and included a Pa.R.A.P. 2119(f) statement in his brief. *See* Appellant's Brief at 23-24. Thus, we now consider whether Appellant has raised a substantial question for our review.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*DiClaudio*, 210 A.3d at 1075 (citations and quotation marks omitted).

In his Pa.R.A.P. 2119(f) statement, Appellant asserted four instances in which the resentencing court abused its discretion: (1) the sentence was unduly harsh and excessive because Appellant was a juvenile at the time of this crime and had mitigating circumstances; (2) the court ignored,

misapprehended, and misapplied the law; (3) the sentence was not justified by sufficient reasons; and (4) the sentence was the product of the court's bias, prejudice, and ill will. Appellant's Brief at 23-24 (reordered for ease of disposition).

Appellant has raised a substantial question with each of these claims.[7]

***See Commonwealth v. White***, 193 A.3d 977, 984 (Pa. Super. 2018)

---

[7] Within Appellant's claim that the resentencing court ignored, misapprehended, and misapplied the law, he presents a sub-issue that the resentencing court violated United States Supreme Court precedent when it considered victim impact statements regarding the appropriate sentence for Appellant at his resentencing hearing. Appellant's Brief at 32. This claim is not within Appellant's 2119(f) statement, and therefore, it is waived. ***Commonwealth v. Radecki***, 180 A.3d 441, 468 (Pa. Super. 2018) (citations omitted) ("[W]e cannot look beyond the statement of questions presented and the prefatory [Rule] 2119(f) statement to determine whether a substantial question exists.").

Appellant also argues that the resentencing court conflated first- and second-degree murder, and "punished [him] as if the jury convicted him of [first-degree murder]." Appellant's Brief at 30. Appellant did not raise this argument in his 2119(f) statement. Thus, it is also waived.

Even if he properly preserved this issue, Appellant's claim lacks merit. By way of background, at the evidentiary hearing, the resentencing court overruled the objection of Appellant's counsel to the use of the term murder by the prosecutor, stating, "Second[-]degree murder is murder." N.T., 2/13/2019, at 86-87. When the resentencing court sentenced Appellant, it stated "The [c]ourt recognizes that the jury found [Appellant] guilty of second[-]degree murder and not guilty of the weapons charge. That said, [Appellant] still bears direct culpability." N.T., 5/17/2019, at 16. Although Appellant points to these comments as an indicator that the resentencing court punished him as if he committed first-degree murder, we are not convinced. Instead, in context, we understand the resentencing court's comment to indicate that Appellant played a direct role in a robbery that resulted in a death, whether or not he was the shooter. Thus, the

*(Footnote Continued Next Page)*

(finding that a substantial question was raised where a juvenile, previously sentenced to LWOP, raised an excessive sentencing claim along with an assertion that the sentencing court failed to consider mitigating factors); ***Commonwealth v. Flowers***, 149 A.3d 867, 871 (Pa. Super. 2016) (noting that an appellant raises "a substantial question for our review by asserting that the trial court failed to state adequate reasons on the record for [an a]ppellant's sentence."); ***Commonwealth v. Lucky***, 229 A.3d 657, 664 (Pa. Super. 2020), *citing* ***Commonwealth v. Corley***, 31 A.3d 293, 297 (Pa. Super. 2011) ("An allegation of bias in sentencing [] raises a substantial question."). Thus, we may consider the merits of these claims, mindful of the following.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

> * * *

> When imposing [a] sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

*(Footnote Continued)* ───────────

resentencing court did not improperly misapply the law and impose an excessive sentence as if it was sentencing Appellant for first-degree murder.

*DiClaudio*, 210 A.3d at 1074-75, *quoting* **Commonwealth v. Antidormi**, 84 A.3d 736, 760-61 (Pa. Super. 2014).

Appellant presents many issues and sub-issues, but the root of his discretionary-aspects-of-sentencing challenges is that the resentencing court had disdain for **Miller** and did not consider the factors **Miller** requires. Precisely, Appellant contends the resentencing judge "did not apply the **Miller** factors to [Appellant's] specific childhood circumstances and recognize their mitigating impact." Appellant's Brief at 34. It is Appellant's position that the resentencing court had an "inordinate fixation on the underlying offense" and "erred by focusing on the tragedy that occurred to the exclusion of any meaningful consideration regarding youth's attendant characteristics." *Id.* at 34, 40 (footnote omitted). Furthermore, Appellant contends that the resentencing court showed bias in the treatment of Appellant in the form of racism and classism. *Id.* at 46.

Preliminarily, we note that 18 Pa.C.S. § 1102.1 was enacted in the wake of **Miller** and sets forth the sentences to be imposed upon juvenile offenders who are convicted of first- or second-degree murder on or after June 25, 2012, the date **Miller** was issued. Although not applicable to Appellant because he was convicted pre-**Miller**, our Supreme Court has held that resentencing courts should look to this section for guidance in resentencing pre-**Miller** defendants. **Commonwealth v. Batts** (**Batts II**), 163 A.3d 410, 482 n. 25, 484 (Pa. 2017).

Under this statute, a juvenile offender convicted of second-degree murder who was less than 18 years old but at least 15 years old at the time of the offense would be subject to a sentence of a minimum of 30 years of imprisonment. 18 Pa.C.S. § 1102.1(c)(1). Section 1102.1 does not prohibit a sentencing court from imposing a minimum sentence that is greater than prescribed in the statute. 18 Pa.C.S. § 1102.1(e). The statute also sets forth factors that a court must consider when determining whether to sentence a juvenile offender to LWOP, including age-related characteristics such as the defendant's mental capacity, maturity, and the degree of criminal sophistication exhibited. 18 Pa.C.S. § 1102.1(d). In cases where the Commonwealth does not seek a LWOP sentence, the sentencing court should apply the traditional sentencing considerations under 42 Pa.C.S. § 9721(b) of the Sentencing Code when fashioning its sentence. *See Commonwealth v. Lekka*, 210 A.3d 343, 355 (Pa. Super. 2019), *citing Batts II*, 163 A.3d at 484. The sentencing court is not required to consider the *Miller* factors in such cases. *See Commonwealth v. Derrickson*, ___ A.3d ___, 2020 WL 6373356, at *8 (Pa. Super. 2020), *citing Lekka*, 210 A.3d at 355.

At the resentencing hearing on February 13, 2019, Appellant presented evidence regarding his deficient intellectual and emotional development, and offers of support by his family upon his potential release from incarceration. A neuropsychologist, Dr. Carol Armstrong, who

examined Appellant, stated that he had a myriad of neuropsychological deficits, some areas of which were extremely impaired. According to Dr. Armstrong, Appellant's IQ indicates he is borderline intellectually disabled. Moreover, Dr. Armstrong stated Appellant experienced a "severe amount of chronic stress in childhood," which hinders the memory structure of the brain, the development of the hippocampus, and causes post-traumatic stress disorder. N.T., 2/13/2019, at 34. Dr. Armstrong proceeded to discuss the events that contributed to her diagnosis that Appellant suffered severe chronic stress, including repeated physical beatings as a child. In addition, Dr. Armstrong stated Appellant suffered multiple right-sided head injuries from unknown events or sources as a child, which impaired Appellant's memory and visual and spatial perception. Dr. Armstrong also testified to Appellant's growth while in prison; Appellant has improved his reading level and earned a general equivalency degree.

On cross-examination, the Commonwealth questioned Dr. Armstrong concerning the reports from evaluations of Appellant conducted in 2000 and 2001. The reports described Appellant as having a temper, quick to become angry, having a propensity to act out aggressively, being manipulative of others, and appearing to have little regard for the feelings or welfare of others. Appellant self-reported he engaged in physical altercations once a week. The Commonwealth also reviewed with Dr. Armstrong Appellant's juvenile delinquency and adult criminal history, including an adjudication for

burglary and a conviction for robbery that Appellant committed after the death of Lacey, but before he was imprisoned. The Commonwealth also cross-examined her about several Pennsylvania Department of Corrections incident reports concerning Appellant. When asked about two unsuccessful placements in treatment units Appellant had as a juvenile, Dr. Armstrong opined the unsuccessful placements demonstrated that Appellant needs positive environmental support for a long period in order to thrive.

Appellant also presented the testimony of his sister, Zanea Summers, who recounted fond memories with Appellant, and stated that she supports Appellant and that he may reside with her if released from incarceration. Appellant's father, James Miller, testified that he met Appellant for the first time when they were both incarcerated in the same institution,[8] and that he would support Appellant in the same manner as Zanea.

The Commonwealth presented the testimony of Patrick Sullivan, director of campus security for Widener University, and the resentencing court heard victim impact testimony from three of Lacey's family members. Sullivan testified to the negative influence the murder had on the students of Widener University and safety measures the University implemented because of the murder. He attributed to the murder 40 to 50 students' decisions not to return to the University the following year. Although the

---

[8] Miller's parole expired in 2010.

Commonwealth was not seeking a sentence of LWOP, Lacey's brother asked the resentencing court to impose its original sentence. The court responded, "Unfortunately, I cannot stand firm on the original sentence" and acknowledged it must follow United States Supreme Court precedent. N.T., 2/13/2019, at 196-97.

The court then heard Argument by Appellant's counsel, along with Appellant's allocution expressing remorse to Lacey's family.

The resentencing court deferred resentencing to May 17, 2019, to "give very serious contemplation as to all the factors listed in *Miller* and Section 1102.1." N.T., 5/17/2019, at 16. When announcing the sentence, the resentencing court acknowledged that it had read the entire trial transcript, the motions that were filed, the exhibits that were submitted, and considered a pre-sentence investigation (PSI) report. *Id.* at 15. The resentencing court analyzed the case pursuant to the three factors set out in subsection 9721(b) and considered the factors set forth in *Miller*.

Considering subsection 9721(b) sentencing factors, the resentencing court thoroughly discussed the impact on Widener University and Lacey's family. Regarding rehabilitative needs, the court referenced Dr. Armstrong's testimony that Appellant required positive environmental support for a long period of time to thrive. The court stated that while Appellant had expressed sorrow to the Lacey family, the "expression lacked true remorse. Rather, it was meek and self-serving. There was no heartfelt contriteness."

- 12 -

N.T., 5/17/2019, at 17. Regarding the consideration of *Miller* factors, the resentencing court noted Appellant was 17 years and 3 months old at the time of the crime, and discussed Dr. Armstrong's findings regarding Appellant's mental capacity and maturity, as well as his improvements while in prison. It also noted Appellant's criminal history as a juvenile, and continued criminal history **after** Appellant committed the instant offense.

On appeal, Appellant essentially argues the resentencing court prioritized the severity of the offense over mitigating factors. Appellant's argument is nothing more than a request for this Court to re-weigh the sentencing factors differently than the resentencing court. This we cannot do. *See Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa. Super. 2009) (citation omitted) ("We cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court.").

Moreover, the resentencing court had the benefit of a PSI report, sentencing guidelines, and statements from Appellant, Appellant's sister, father, and counsel. "[W]here the sentencing judge had the benefit of a [PSI] report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Finnecy*, 135 A.3d 1028, 1038 (Pa. Super. 2016) (citation omitted). Furthermore, the resentencing court used Section 1102.1 as guidance, noting that it required an offender convicted post-*Miller* to be resentenced

to a minimum sentence of at least 30 years of imprisonment, and the section does not prohibit the court from imposing a minimum sentence that is greater than prescribed. *See* 18 Pa.C.S. § 1102.1(c)(1), (e). The resentencing court engaged in a reasoned analysis of the sentencing factors with reference to the evidence presented at the sentencing hearing. The court considered Appellant's role in the crime, the severity of the crime, his escalating criminality, need for structure, and protection of the public. Further, it considered mitigating evidence presented by Dr. Armstrong, but determined the mitigating evidence did not warrant a lesser sentence than 40 years to life imprisonment. Finally, the resentencing court considered Appellant's allocution, which it determined "lacked true remorse." N.T., 5/17/2019, at 17. Lack of remorse is an appropriate sentencing consideration. *See, e.g.*, *Commonwealth v. Begley*, 780 A.2d 605, 644 (Pa. 2001) (noting lack of remorse, as a sign of the defendant's character, is an appropriate consideration for sentencing outside of the guidelines). We must "give great weight to the sentencing court's discretion, as he or she is in the best position to measure factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference." *Commonwealth v. Colon*, 102 A.3d 1033, 1043 (Pa. Super. 2014) (citation omitted).

Appellant's position that the resentencing court improperly had an "inordinate fixation" on the underlying offense is meritless, as it was within

the resentencing court's discretion to place emphasis on the serious nature of this crime. Second-degree murder is a serious crime; serious enough that our legislature deemed it warranted a mandatory **minimum** of 30 years' incarceration even for juveniles convicted after ***Miller***. Moreover, ***Miller*** and its jurisprudence do not require that a resentencing court prioritize mitigating factors to the exclusion of all others or sentence those who committed crimes as a juvenile to the minimum sentence. Instead, the resentencing court must not "treat juveniles as 'miniature adults,'" and bear in mind "as a matter of law '[] children are constitutionally different from adults for purposes of sentencing,' in that they 'have diminished culpability and greater prospects for reform,' making them 'less deserving of the most severe punishments.'" ***Batts II***, 163 A.3d at 448, *quoting* ***Miller***, 567 U.S. at 471. Nevertheless, the court is permitted to hold juveniles accountable and impose a sentence "commensurate" with a juvenile's actions. ***Id.*** at 450. Our review confirms that the resentencing court considered and weighed the evidence according to the appropriate sentencing factors pursuant to subsection 9721(b), including the mitigating factors regarding Appellant's youth and challenging upbringing.[9] Although it considered the

---

[9] Appellant also contends that the resentencing court unconstitutionally applied a burden upon Appellant at resentencing. Appellant's Brief at 28. Appellant relies on ***Batts II*** for the contention that the defense bears no burden at a resentencing hearing. 163 A.3d at 471-72. Appellant's reliance on ***Batts II*** is misplaced, as ***Batts II*** addressed the burden of proof at a

*(Footnote Continued Next Page)*

*Miller* factors, the court had no obligation to do so in this case. *See Derrickson, supra* at \*8, *citing* *Lekka*, 210 A.3d at 355. Therefore, it could not have abused its discretion for failing to apply the *Miller* factors in the manner desired by Appellant.

Insofar as Appellant claims the resentencing court's statement that it "unfortunately" could not stand firm on Appellant's original sentence proves the resentencing court had contempt for the holding in *Miller*, the use of the word "unfortunately" is an acknowledgement of the sentiments of Lacey's brother and "shows only that the judge had a grasp of human nature, not that he was biased" against Appellant. *See Commonwealth v. Flor*, 998 A.2d 606, 642 (Pa. Super. 2010) (regarding a victim impact statement, our Supreme Court held that the judge's statement that he would have understood a call for vengeance by a murdered officer's brother does not suggest or imply that the court was in any sense motivated by vengeance or bias). The resentencing court's statement does not establish that it

*(Footnote Continued)* ───────────────

resentencing hearing where the Commonwealth is seeking LWOP. Here, the Commonwealth did not seek, and the resentencing court did not consider, a LWOP sentence. While the resentencing court stated at the beginning of the evidentiary hearing, "The way the hearing goes is, [defense counsel], you bear the burden of proof," Appellant's Brief at 28, *citing* N.T., 2/13/2019, at 3, nothing in the resentencing court's opinion or statements at the hearings indicate that the resentencing court actually placed a burden of proof on the defense. Despite the improper phrasing, it appears the resentencing court meant to the extent that defense wanted to show mitigating evidence to argue for a lesser sentence, the defense had the opportunity and burden to do so.

misapprehended, misapplied, or ignored **Miller**. Thus, there is no merit to Appellant's claim in this regard.

We next turn to Appellant's contention that the resentencing court abused its discretion when it fashioned his sentence because of the judge's partiality and bias, or ill will toward Appellant. Specifically, Appellant claims that the resentencing court "portrayed [Appellant] as older than he was at the time of the offense." Appellant's Brief at 46. Appellant also raises other concerns of bias. In his brief, Appellant argued the following.

> One can only speculate about the source of the judge's animosity against the defense. **See** [Trial Court Opinion, 8/22/2019, at 18] (insisting Appellant cannot prove bias). It might stem from conscious or implicit racial and class-based prejudice. Sentencing disparities are well-documented in cases like [Appellant's] involving a white victim and black defendant. Intended or not, it is impossible to overlook the judge's dog whistling. The court:
>
> - vilified [Appellant] as "extremely street wise"
> - []
> - maligned the entire [c]ity of Chester
> - groundlessly belittled [Appellant's] substantial family support, and
> - doubted [Appellant's] history of medical and emotional trauma

Appellant's Brief at 46 (footnotes and some commas omitted).

We acknowledge that the types of bias Appellant describes can occur in society and sentencing. Nevertheless, we have reviewed the comments and the record, and do not discern bias by the resentencing court that resulted in the excessive sentencing of Appellant. In the instant case, the resentencing court accurately stated the age of Appellant as 17 years and 3

months old at the time of the murder. N.T., 5/17/2019, at 16, Trial Court Opinion, 8/22/2019, at 13. Nonetheless, the resentencing court stated in its Rule 1925(a) opinion that "Appellant fails to recognize that he was not a 'child' at the time of the offense." Trial Court Opinion, 8/22/2019, at 13. While the resentencing court's statement that Appellant was not a child is technically incorrect because Appellant was indeed a child at the time of his crime, the resentencing court appears to have used the term as shorthand to express that Appellant was close to 18 years old and to emphasize that Appellant's age did not completely absolve him of guilt.

As to the other statements recounted above, those statements were made by the resentencing court in the context of imposing Appellant's sentence. Our Supreme Court has stated "it is not improper for a judge to address a defendant after sentencing for the purpose of reiterating to the defendant that the punishment just imposed was well-deserved." *Flor*, 998 A.2d at 642. Thus, we discern no abuse of discretion and conclude that the resentencing court exercised its judgment without partiality, prejudice, bias, or ill will.

In his remaining two issues, Appellant raises challenges to the legality of his sentence. "When reviewing the legality of a sentence, our standard of review is *de novo* and our scope of review is plenary." *Lekka*, 210 A.3d at 355.

First, Appellant claims that the resentencing court imposed a *de facto* LWOP sentence because his minimum sentence of 40 years does not offer Appellant a meaningful opportunity for parole. Appellant's Brief at 50. We consider this claim mindful of the following.

"[A] trial court may not impose a term-of-years sentence, which constitutes a *de facto* LWOP sentence, on a juvenile offender convicted of homicide unless it finds, beyond a reasonable doubt, that he or she is incapable of rehabilitation." **Commonwealth v. Foust**, 180 A.3d 416, 431 (Pa. Super. 2018). "There are certain term-of-years sentences [that] clearly constitute *de facto* LWOP sentences. For example, a 150-year sentence is a *de facto* LWOP sentence. Similarly, there are clearly sentences [that] do not constitute *de facto* LWOP sentences. A sentence of 30 years to life falls into this category." **Id.** at 438.

Appellant's minimum sentence of 40 years of imprisonment falls between these two categories. The **Foust** Court "decline[d] to draw a bright line [] delineating what constitutes a *de facto* LWOP sentence and what constitutes a constitutional term-of-years sentence." **Id.** However, in light of **Foust**, this Court outlined the method for determining where such "in between" minimum sentences fall on the spectrum.

> The key factor in considering the upper limit of what constitutes a constitutional sentence, in this narrow context, appears to be whether there is "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." **Graham v. Florida**, 560 U.S. 48, 75 (2010). Implicit in this standard is the notion it would not be meaningful to provide an opportunity for

- 19 -

release based solely on the most tenuous possibility of a defendant's surviving the minimum sentence imposed. To be meaningful or, at least, **potentially** meaningful, it must at least be **plausible** that one could survive until the minimum release date with some consequential likelihood that a nontrivial amount of time at liberty awaits. Thus, though it expressly declined to do so, the ***Foust*** Court seemed to suggest some sort of meaningful-opportunity-for-release standard by declaring that a 150–years–to–life sentence constitutes a *de facto* LWOP sentence.

***Commonwealth v. Bebout***, 186 A.3d 462, 467 (Pa. Super. 2018) (footnote omitted; citations altered; emphasis in original). Applying this test, we concluded in ***Bebout*** that a minimum sentence of 45 years, which made Bebout eligible for parole at 60 years old, did not constitute a *de facto* LWOP sentence.

[Bebout's] opportunity for release [was] meaningful, especially in light of the gravity of his crime, because he has the **potential** to live for several decades outside of prison if paroled at his minimum.

Thus, based on the record and arguments before us, we conclude that [Bebout] has simply failed to meet his burden of demonstrating that the lower court sentenced him to a *de facto* LWOP sentence. There simply is no comparison between the opportunity to be paroled at 60 years of age and 100+ years of age. The difference is, quite literally, a lifetime. As such, we are not convinced that [Bebout's] sentence is the functional equivalent of LWOP.

***Id.*** at 469 (emphasis in original); ***see also Lekka***, 210 A.3d at 357-58 (concluding that because the appellant's term of 45-years-to-life imprisonment rendered him eligible for parole at the age of 62, it was not a *de facto* LWOP sentence).

Here, the resentencing court sentenced Appellant to a minimum term of 40 years' imprisonment. Appellant has been incarcerated for second-degree murder since he was 17 years old. Accordingly, Appellant will be eligible for parole when he is 57 years old. Because Appellant will have a meaningful opportunity to obtain release and potential to live several decades outside of prison if paroled at that time, we conclude that Appellant's minimum sentence does not constitute a *de facto* LWOP sentence, and his claim is without merit.

Lastly, Appellant claims that his maximum sentence of life imprisonment is illegal.[10] Specifically, he argues that the resentencing court erred in relying on, *inter alia*, **Commonwealth v. Olds**, 192 A.3d 1188 (Pa. Super. 2018), which held that a maximum sentence of life imprisonment is required for juveniles convicted of second-degree murder pre-**Miller**, because he believes that the case was decided erroneously. Appellant's Brief at 58. In support, Appellant contends that pursuant to **Miller** and **Graham v. Florida**, 560 U.S. 68 (2010), the imposition of a mandatory maximum term of life imprisonment is unconstitutional and violates the mandates of proportionality and individualized sentencing. Appellant's Brief at 58-65. According to Appellant, "[a] child who commits second[-]degree

---

[10] Although Appellant did not include this issue in his Pa.R.A.P. 1925(b) statement, it is not waived. **See Commonwealth v. Foster**, 17 A.3d 332, 336 (Pa. Super. 2011) (noting that a challenge to the legality of a sentence presents a nonwaivable jurisdictional issue).

murder" is akin to a child "who commits a non-homicide offense," and therefore must not "suffer the same maximum sentence as if the jury convicted him of first-degree murder." *Id.* at 62.

By way of background, our Supreme Court held that in re-sentencing a juvenile defendant convicted of **first-degree** murder pre-*Miller*, a court may sentence the defendant to LWOP only after finding him "permanently incorrigible and that rehabilitation would be impossible[;]" otherwise, the defendant shall be sentenced to life with the possibility of parole following a minimum term-of-years sentence. *Batts II*, 163 A.3d at 484 (Pa. 2017). Neither our Supreme Court nor the Pennsylvania General Assembly has addressed the resentencing procedure for juveniles, like Appellant, who were convicted of **second-degree** murder pre-*Miller*. Although *Batts II* involved a juvenile convicted of first-degree murder, this Court has found no difference that would place a juvenile convicted of second-degree murder outside the *Batts II* analysis.[11] *See Olds*, 192 A.3d at 1194; *see also*

---

[11] *Batts II* established guidelines and procedures for sentencing and resentencing juveniles convicted of first-degree murder. 163 A.3d at 483-84. The Court announced that

> there is a presumption against the imposition of a sentence of life without parole for a defendant convicted of first-degree murder committed as a juvenile. The Commonwealth must give reasonable notice of its intention to seek a sentence of [LWOP]. To rebut the presumption, the Commonwealth has the burden to prove, beyond a reasonable doubt, that the juvenile offender is permanently incorrigible and thus is unable to be rehabilitated.

*(Footnote Continued Next Page)*

***Commonwealth v. Melvin***, 172 A.3d 14, 21 n.3 (Pa. Super. 2017). Accordingly, our Court in ***Olds*** rejected the claim that the imposition of a mandatory maximum sentence of life imprisonment for a juvenile convicted of second-degree murder is illegal and held that "trial courts **must** sentence juveniles convicted of second-degree murder prior to June 25, 2012 to a maximum term of life imprisonment[.]"  192 A.3d at 1198 (emphasis added).

"It is beyond the power of a Superior Court panel to overrule a prior decision of the Superior Court, except in circumstances where intervening authority by our Supreme Court calls into question a previous decision of this Court."  ***Commonwealth v. Pepe***, 897 A.2d 463, 465 (Pa. Super. 2006) (citations omitted).  That has not occurred here.  Thus, our Court's

*(Footnote Continued)* ──────────

> Consistent with the mandate of ***Miller*** and ***Montgomery***, for a [LWOP] sentence to be constitutionally valid, the sentencing court must find that the juvenile offender is permanently incorrigible and that rehabilitation would be impossible.  The Commonwealth's evidence and the sentencing court's decision must take into account the factors announced in ***Miller*** and [subsection 1102.1(d)].  Even if the Commonwealth satisfies its burden of proof, the sentencing court is not required to impose a [LWOP] sentence upon a juvenile offender.
>
> In sentencing a juvenile offender to life with the possibility of parole, traditional sentencing considerations apply. ***See*** 42 Pa.C.S. § 9721(b).  The sentencing court should fashion the minimum term of incarceration using, as guidance, [subsection 1102.1(a)].

***Id.***

prior decision in **Olds** is binding.[12]  **See Pepe**, 897 A.2d at 465.  Therefore, Appellant's claim is without merit.

Judgment of sentence affirmed.

Judge Lazarus joins the opinion.

Judge King concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/21/21

---

[12] Although we are bound by this Court's holding in **Olds**, if we were writing on a clean slate, because of the shakiness of the felony-murder rule, this author would permit juveniles convicted of second-degree murder pre-**Miller** to argue for a maximum term-of-years sentence in lieu of a mandatory life tail.  **See Commonwealth ex rel. Smith v. Myers**, 261 A.2d 550, 553-55 (Pa. 1970) (detailing the "harsh criticism, most of it thoroughly warranted" of the felony-murder rule, finding it "non-essential," a doubtful deterrent, and "a hold-over from the days of our barbarian Anglo-Saxon ancestors of pre-Norman days, [having] very little right to existence in modern society[,]" so as to "make clear how shaky are the basic premises on which [the rule] rests.") (footnote and internal quotation marks omitted).