J-A23002-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALISON KARA-LYNNE MORRIS | : | |
| | : | |
| Appellant | : | No. 1587 MDA 2022 |

Appeal from the Judgment of Sentence Entered June 7, 2022
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s):  CP-21-CR-0002965-2020

BEFORE:   LAZARUS, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:            **FILED: APRIL 16, 2024**

Alison Kara-Lynne Morris appeals from the judgment of sentence, entered in the Court of Common Pleas of Cumberland County, after she entered a plea of *nolo contendere* to one count of voluntary manslaughter.[1] After careful consideration, we affirm.

At Morris' April 7, 2022 plea hearing, the Commonwealth recited the facts of this case, to which Morris pled no contest, as follows:

> [O]n [October] 26[,] 2020, [Morris] and the victim [], Ryan Young, [] were involved in a relationship[.]  They had children together and were living together.  On that date, the[y] were involved in a domestic [verbal] argument[.]  At some point during that argument, [Morris] went into the bathroom of the apartment behind a closed door.  While she was in that bathroom, [Young] was in the hallway outside of the bathroom.  The two of them were still arguing.   They   were   also   on   the   phone   with   different

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2503(b).

individuals each at the same time. At some point during that argument, [] Young entered the bathroom.[2] And when [Young] entered the bathroom, [Morris], who was seated on a stool on the floor of the bathroom, had a knife[3] in her hand at the time, reached up and stabbed [] Young in the leg. That stab wound cut [Young's] femoral artery. [Young called] 9-1-1 [] almost immediately[.] Unfortunately[, Y]oung died as a result of that wound [shortly thereafter at the hospital].

N.T. Plea Hearing, 4/7/22, at 5-6. In exchange for Morris' hybrid[4] no contest plea, the Commonwealth agreed to not seek application of the deadly weapon enhancement at sentencing and agreed to withdraw all other charges—those at counts 1 through 4 (that include murder,[5] aggravated assault,[6] involuntary

_____

[2] At the plea hearing, the defense explained that the bathroom "door really isn't capable of being locked because of some damage that was done to it on a prior occasion. But the door was locked [when Morris was in the bathroom.]" N.T. Plea Hearing, 4/7/22, at 22. Further, the Commonwealth acknowledged that just before entering the bathroom, the victim stated, "Hold on, this bitch is in the bathroom talking shit," *see id.* at 21, presumably speaking to the individual with whom he was on the phone.

[3] Morris kept the knife in the bathroom because she would use it on occasion for self-cutting. *See id.* at 23.

[4] A "hybrid" plea is one where the parties did not bargain for a specific sentence but negotiated as to a certain aspect of the sentence. *See Commonwealth v. Heaster*, 171 A.3d 268, 271 (Pa. Super. 2017).

[5] 18 Pa.C.S.A. § 2501(a).

[6] *Id.* at § 2702(a)(1).

manslaughter,[7] and recklessly endangering another person[8].)[9] The trial court accepted Morris' plea, ordered a presentence investigation report (PSI), and scheduled sentencing for June 7, 2022.

At the sentencing hearing, the court heard several witnesses' victim impact statements, considered 27 letters written to the court by family and friends of the victim, considered the PSI, heard Morris' allocution, and heard argument by the Commonwealth and defense counsel. Ultimately, the trial court sentenced Morris to 7 to 14 years' incarceration. At the time it imposed the sentence, the court stated:

> It is noted that this sentence is above the aggravated range of the sentencing guidelines[10] and is given in consideration of the life lost here, that there was evidence that the defendant and the victim were in a tumultuous relationship, that the defendant made statements by text messages that she wishes to kill the victim, in consideration of the circumstances surrounding the voluntary manslaughter, and that any lesser sentence would depreciate from the seriousness of the crime.

_____

[7] *Id.* at § 2504(a).

[8] *Id.* at § 2705.

[9] The Commonwealth originally only charged Morris with the four withdrawn charges, but, at the plea hearing, the Commonwealth amended the criminal information to include a fifth count of voluntary manslaughter for purposes of the plea. *See* N.T. Plea Hearing, 4/7/22, at 2.

[10] Morris has a prior record score of 0, and the voluntary manslaughter charge carries an offense gravity score of 11, thus calling for a standard-range sentence of 36 to 54 months' incarceration, with the top of the aggravated range at 66 months' incarceration, and with a statutory maximum sentence of up to 20 years' incarceration. *See* 204 Pa. Code § 303.16(a) (Basic Sentencing Matrix).

N.T. Sentencing Hearing, 6/7/22, at 34-35. On June 17, 2022, Morris filed a timely post-sentence motion, seeking modification of sentence, arguing that her sentence should be within the standard range because the reasons relied upon by the trial court did not support the sentence and because the court failed to consider other factors.[11] The court denied Morris' post-sentence

_____

[11] Morris' post-sentence motion stated, in relevant part, as follows:

> 5. None of the [court's stated] reasons individually or cumulatively support a sentence in [] or above the aggravated range.
>
> 6. The [c]ourt[,] while noting that [Morris] and the victim were in a tumultuous relationship[,] did not take into consideration that [its] nature [] was due to both [Morris'] and the victim's behavior. Additionally, [although] the court heard evidence of the existence of a [protection from abuse order] against the victim by [Morris] and the victim had previously pled guilty to committing [s]imple [a]ssault against [Morris] while she was pregnant[,] the [c]ourt gave no consideration to this evidence.
>
> 7. The [c]ourt[,] while hearing evidence of text messages sent by [Morris,] did [not] consider the[ir] context [], [Morris'] mental health at the time[,] or the [victim's] statement [] moments before he was stabbed when he said to a person to whom he was talking on the phone, "hold on this bitch is talking shit."
>
> 8. The [c]ourt also stated that it [] account[ed for] the circumstances surrounding the voluntary manslaughter. However, those circumstances were fully outlined at the time of the plea and showed . . . [Morris] and the victim were arguing, that [Morris] had shut herself in the bathroom to get away from the victim, [and] that the victim entered the bathroom right after making the statement, "hold on this bitch is talking shit." When the victim entered the bathroom and approached [Morris,] she was sitting on a booster step [that] was only about six inches off of the ground and [] as the victim came at her[,] she stabbed him in the leg one time with a kitchen knife that she kept in the

*(Footnote Continued Next Page)*

- 4 -

motion on October 20, 2022. Morris filed a timely notice of appeal on November 17, 2022. Morris and the trial court have complied with Pa.R.A.P. 1925.

On appeal, Morris raises the following question for our review: "[whether] the Honorable Court abuse[d] its discretion in imposing a sentence outside of the standard and aggravated [] range of the Pennsylvania Sentencing Guidelines." *See* Appellant's Brief, at 4. Morris also includes two sub-issues in her statement of questions involved, which are stated as follows: (1) "[whether] the Honorable Court's reasons for imposing the sentence [was] supported by the record," and (2) "[whether] the Honorable Court's sentence [was] supported by sufficient reasons to deviate from the Pennsylvania Sentencing Guidelines." *Id.* As such, Morris challenges the discretionary aspects of her sentence.[12]

Appellants may not challenge the discretionary aspects of sentencing as of right. *See Commonwealth v. Sierra*, 752 A.2d 910, 912 (Pa. Super. 2000). A request for appellate review of the discretionary aspects of a sentence is considered a petition for permission to appeal. *See*

---

bathroom that she used to cut herself. After the stabbing[, Morris] got on the phone with 9[-]1[-]1 and made efforts to stop the bleeding[,] which continued until the police arrived. None of these circumstances support a sentence outside of the standard range.

Post-Sentence Motion, 6/17/22, at 1-2.

[12] A hybrid plea agreement does not preclude appellate review of those discretionary aspects of the sentence that were not agreed upon during negotiations. *See Heaster*, 171 A.3d at 271.

- 5 -

*Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa. Super. 2014). Prior to reaching the merits of a discretionary sentencing issue, and to invoke the appellate court's jurisdiction, the appellate court conducts a four-part test to determine:

> (1) whether the appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether the appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[A] § 9781(b).

*Commonwealth v. Bradley*, 237 A.3d 1131, 1138 (Pa. Super. 2020), citing *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006) (brackets omitted).

Here, Morris preserved discretionary sentencing claims in a post-sentence motion seeking to modify her sentence, filed a timely notice of appeal, and has included a Rule 2119(f) statement in her brief. **See** Appellant's Brief, at 9. Consequently, we turn to whether Morris' appeal raises a substantial question.

"A defendant presents a substantial question when [s]he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." *Commonwealth v. Dodge*, 77 A.3d 1263, 1268-69 (Pa. Super. 2013) (citation omitted). The Court determines what constitutes a substantial question on a case-by-case basis. *See Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa. Super. 2011). In reviewing for a substantial question, "[o]ur

- 6 -

inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." *Commonwealth v. Akhmedov*, 216 A.3d 307, 328 (Pa. Super. 2019) (citation and quotation marks omitted). The appellate court cannot look beyond the statement of questions involved and the prefatory Rule 2119(f) statement to determine whether a substantial question exists. *See Commonwealth v. Christine*, 78 A.3d 1, 10 (Pa. Super. 2013).

In her Rule 2119(f) statement, Morris raises the following three reasons she relies upon to invoke our discretionary review:

1. The [s]entencing court abused its discretion in imposing a sentence above the aggravated range of the Pennsylvania Sentencing Guidelines when the reasons relied upon [] by the [s]entencing [c]ourt were not supported by the record.

2. The [s]entencing [c]ourt [a]bused its discretion in imposing a sentence above the aggravated range of the Pennsylvania Sentencing Guidelines based upon reasons that are contrary to the fundamental norms of the sentencing process.

3. The [s]entencing [c]ourt sentence[d Morris] above the aggravated range of the Pennsylvania Sentencing Guidelines and the sentence was unreasonable under the circumstances.

Appellant's Brief, at 9.

An allegation that the trial court relied upon factors not supported by the record raises a substantial question. *See Commonwealth v. Downing*, 990 A.2d 788, 792 (Pa. Super. 2010). A claim that advances a colorable argument that the sentencing court's actions were either inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms underlying the sentencing process also raises a substantial question.

*See Commonwealth v. King*, 182 A.3d 449, 454 (Pa. Super. 2018). Finally, a substantial question exists where an "appellant asserts that the trial court failed to state sufficiently its reasons for imposing sentence outside the sentencing guidelines." *Commonwealth v. Rodda*, 723 A.2d 212, 214 (Pa. Super. 1999) (en banc). However, bald claims of an excessive sentence do not raise a substantial question. *See Commonwealth v. Zeigler*, 112 A.3d 656, 662 (Pa. Super. 2015).

Here, only the first two reasons in Morris' Rule 2119(f) statement raise a substantial question. Morris' first reason clearly raises a substantial question where she alleges the court relied upon evidence not of record in imposing Morris' sentence. *See Downing*, 990 A.2d at 792. When considering the second subpart of Morris' statement of questions presented, *see* Appellant's Brief, at 4, and her Rule 2119(f) statement together,[13] *see id.* at 9; *see also Christine*, 78 A.3d at 10, we conclude that Morris' second reason in her Rule 2119(f) statement also raises a substantial question insofar as she claims her sentence is contrary to the fundamental norms underlying the sentencing process where the court did not rely on sufficient reasons to deviate from the Pennsylvania Sentencing Guidelines. *See King*, 182 A.3d at 454; *see also*

---

[13] Standing alone, and without reference to Morris' statement of questions involved, we would find the second issue raised in Morris' Rule 2119(f) statement does not raise a substantial question insofar as it fails to specify **which** reasons relied upon by the court were contrary to **which** fundamental norms underlying the sentencing process. *See Commonwealth v. Rose*, 641 A.2d 617, 618 (Pa. Super. 1994).

*Rodda*, 723 A.2d at 214. However, Morris' third reason—that her sentence is excessive under the circumstances, without her providing any indication of **which** circumstances are at issue—amounts to a bald allegation of excessiveness that does not raise a substantial question. *See Zeigler*, 112 A.3d at 662. Consequently, we may proceed to review the merits of the two substantial questions raised above.[14]

We consider the merits of Morris' claims "mindful that sentencing is vested in the sound discretion of the sentencing court, and we shall not disturb a sentence absent a manifest abuse of discretion." *Commonwealth v. Schroat*, 272 A.3d 523, 527 (Pa. Super. 2022).

> In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias[,] or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Summers*, 245 A.3d 686, 692-93 (Pa. Super. 2021) (citation omitted). In addition to the broad sentencing discretion afforded to the sentencing court, appellate courts also grant the sentencing court great deference, as it is the sentencing court that is in the best position to "view the defendant's character, displays of remorse, defiance[,] or indifference, and the overall effect and nature of the crime." *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007) (citation omitted).

---

[14] Morris combines the three reasons raised in her Rule 2119(f) statement into only two subparts in the argument section of her brief, in violation of Pa.R.A.P. 2119(a).

When imposing a sentence, the sentencing court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). Further, the sentencing court is required to consider the circumstances of the offense and the character of the defendant, paying particular attention to the defendant's prior criminal record, her age, personal characteristics, and her potential for rehabilitation. *See Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa. Super. 2002). Pennsylvania courts must also consider the Pennsylvania Sentencing Guidelines as one sentencing factor in the overall analysis. *See Walls*, 926 A.2d at 964-65 ("[T]he guidelines have no binding effect, create no presumption in sentencing, and do not predominate over other sentencing factors—they are advisory guideposts that are valuable, may provide an essential starting point, and that must be respected and considered[.]"). Although they must be considered, the Pennsylvania Sentencing Guidelines are not mandatory, and thus do not prohibit any particular sentence otherwise within the statutory maximum. *See Commonwealth v. Mitchell*, 883 A.2d 1096, 1107 (Pa. Super. 2005). The balancing of the sentencing factors is within the sole province of the sentencing court. *See Commonwealth v. Velez*, 273 A.3d 6, 10 (Pa. Super. 2022).

When we conduct the merits analysis of a challenge to the discretionary aspects of a sentence, we are also guided by the statutory requirements of 42 Pa.C.S.A. §§ 9781(c) and (d). *See Zeigler*, 112 A.3d at 661. Section

9781(c)(3)—the only portion of subsection (c) applicable here—provides that this Court must vacate Morris' sentence and remand to the sentencing court for resentencing if "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S.A. § 9781(c)(3). In this context, we consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d). The appellate court is not permitted to re-weigh the sentencing factors considered by the sentencing court. *See Summers*, 245 A.3d at 695. This Court has previously explained that an aggravated-range sentence is justified to the extent that the circumstances of the case are atypical of the crime such that a more severe punishment is appropriate. *See Commonwealth v. Fullin*, 892 A.2d 843, 848 (Pa. Super. 2006). Also, "[w]here [a PSI] exist[s], we shall [] presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988).

In her first claim, Morris argues that the record did not support the sentencing court's findings that the victim was a good father and a "shining light," especially where the record contains: (1) text messages from the

victim to Morris the day prior to the stabbing, which Morris characterizes as cruel, crude, insulting, denigrating, aggressive, and bordering on threatening; (2) the victim's simple assault conviction for acts committed against Morris while she was pregnant; (3) a protection from abuse order against the victim and in favor of Morris; (4) evidence that the victim assaulted Morris earlier on the day of the stabbing, including squeezing Morris' jaw to make her stop talking and throwing her onto the bed; (5) evidence of the victim's breach of the bathroom door where Morris had barricaded herself away from the victim; and (6) evidence that the victim stated, "Hold on, this bitch is in the bathroom talking shit," immediately prior to breaching the locked bathroom. *See* Appellant's Brief, at 13-17. Morris also argues that the sentencing court's statements regarding her failure to exit the relationship with the victim amounted to victim-blaming and that the court abused its discretion in finding Morris singularly responsible for that failure. *See id.* at 16. Further, Morris claims that the sentencing court's reliance on Morris' failure to exit the relationship does not consider that Morris, in fact, was trying to end that relationship on the day of the incident. *See id.* at 17; *see also* Affidavit of Probable Cause, 11/30/20, at ¶ 3.

Here, after the presentation of evidence and argument at the sentencing hearing, the sentencing court stated on the record that:

[] I have at length reviewed everything in this case. **I appreciate all of the letters submitted on behalf of [the victim].** I understand much of the facts surrounding the incident that we are here for. **As I said, I've reviewed the [PSI] and all the**

**documentation on behalf of [Morris]** for the sentencing memorandum.

One thing that was very clear to me from [] **all the letters on behalf of the victim is how everyone discussed how much he was ["]a light["] and made people happy. Lots of comments about his dimples and that he was a good father, and that he was there for everyone. Several people specifically used the word that he was a ["]shining["] light for them.** So[,] it's clear that the loss that has been sustained by all of his family is unbearable. It's clear to me that the family is hurting by the circumstances that happened here.

It's also clear to me from the facts that there was unfortunately a tumultuous relationship **between both of them**. That **they both** should have separated **from each other** long ago. Instead, despite charges against the victim in the past, and despite protection from abuse orders, **they both went back to the toxic relationship and[,] unfortunately[,] it led us to here**. It's correct that no amount of jail time will bring back [the victim] and what he had to offer and what he has to offer to all of the family members.

I am sure that [] Morris understands that given she has been sitting in prison for how long as she has that her mental health, unfortunately, and lack of getting out of a tumultuous relationship[,] contributed to her being here today. What is really sad, of course, is the children[, a]ll of the grandchildren, but specifically [Morris'] five children[.] I know that you are already suffering a loss, Ms. Morris, from not having them, and I know that the family of [the victim] is also suffering from that loss and I hope that those children and, obviously, I will be following that, but that those children are doing well in their respective placements and will someday see their way forward to having good lives.

I take into account that [Morris] has no prior record, but, again, I already mentioned all of the things where she could have made other decisions that might have avoided us being here today. I take into account that the standard[-]range sentencing guidelines start at 36 months, which is three years in prison, up to 54 months, so that would be the bottom of the standard range.

> I take into account that all of the family indicated that [Morris] showed no remorse to date. That being said, [] defendants generally cannot speak[,] or they are given the advice not to speak[,] to family members while charges are pending, and I heard her express remorse today.
>
> *    *    *
>
> **[T]he court being in receipt of a [PSI,] upon which it relies**, the sentence of the court at count 5 is that [Morris] . . . undergo imprisonment in a [S]tate [C]orrectional [F]acility for not less than 84 months nor more than 168 months. . . . It is noted that this sentence is above the aggravated range of the sentencing guidelines and is given in consideration of the life lost here, that there was evidence that [Morris] and the victim were in a tumultuous relationship, that [Morris] made statements by text messages that she wishes to kill the victim, in consideration of the circumstances surrounding the voluntary manslaughter, and that any lesser sentence would depreciate from the seriousness of the crime.

N.T. Sentencing Hearing, 6/7/22, at 31-35 (emphasis added; unnecessary capitalization omitted).

Here, we find the record—especially the letters and victim impact statements—support the trial court's findings that the victim's family considered the victim to be a good father and a shining light. Indeed, it is appropriate for the sentencing court to consider the gravity of the offense as it relates to **the impact on the life of the victim and on the community**[.]" 42 Pa.C.S.A. § 9721(b) (emphasis added). Additionally, our review reveals that the trial court did not place the blame for failing to end the tumultuous relationship with the victim solely on Morris, and instead, the court referred to both Morris and the victim when apportioning responsibility for failure to end the relationship. *See* N.T. Sentencing Hearing, 6/7/22, at

- 14 -

32. Finally, we conclude that Morris' first issue is actually a request for this Court to re-weigh the sentencing factors, which we may not do. **See Summers**, 245 A.3d at 695. Consequently, we deem Morris' first issue meritless.

In her second claim, Morris asserts that the sentencing court impermissibly relied upon the seriousness of the offense and failed to distinguish her case from a typical voluntary manslaughter case when sentencing above the aggravated range. **See** Appellant's Brief, at 17-19. Further, Morris argues she was rightfully afraid of the victim, her fears were well-founded, and she should have been sentenced as such. **See id.** at 20-21.

Here, at the outset, we note that Morris' arguments on this issue do not fully pertain to the issue for which we granted her permission to appeal—that the sentencing court did not rely on sufficient reasons to deviate from the Pennsylvania Sentencing Guidelines. To the extent Morris raises issues for the first time on appeal—namely, the court's consideration of the seriousness of her crime as well as its failure to find that Morris was "rightfully" afraid of the victim[15]—we find these arguments waived as Morris did not raise them at

---

[15] We recognize that "an averment that the court sentenced based solely on the seriousness of the offense and failed to consider all relevant factors raises a substantial question." **Commonwealth v. Macias**, 968 A.2d 773, 776 (Pa. Super. 2009). Further, we observe that a contention that the trial court relied upon factors which are already considered in the sentencing guidelines when sentencing in the aggravated range raises a substantial question. **See**
*(Footnote Continued Next Page)*

- 15 -

sentencing or in a post-sentence motion.[16]  *See Commonwealth v. Mann*,

820 A.2d 788, 794 (Pa. Super. 2003) (objections to discretionary aspects of

_____

*Commonwealth v. Clemat*, 218 A.3d 944, 959 (Pa. Super. 2019). However, we may only look at Morris' Rule 2119(f) statement and the statement of questions involved, *see* Pa.R.A.P. 2116, when determining whether a substantial question exists. *See Christine*, 78 A.3d at 10.  Because Morris only raises these claims in the argument section of her brief, we may not consider whether a substantial question is raised, and therefore, these claims are additionally waived for that reason.

[16] Even if not waived, we conclude this issue is meritless when analyzed under each potential formulation of the question presented:

First, the sentencing court placed sufficient reasons on the record for deviating above the aggravated guideline range, including:  (1) the court's consideration of the victim's life lost; (2) that Morris and the victim were in a tumultuous relationship for an extended period of time; (3) that Morris sent text messages stating she wished to kill the victim; and (4) the circumstances surrounding the voluntary manslaughter.  *See* N.T. Sentencing Hearing, 6/7/22, at 34-35.

Second, to the extent the sentencing court considered the seriousness of the crime, which is already accounted for in the sentencing guidelines, the court was permitted to do so, and did, in connection with its consideration of other relevant facts, namely, the life lost, the tumultuous relationship, the text messages, and the circumstances of the crime.  *See Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006) ("Trial courts are permitted to use . . . factors already included in the guidelines if[] **they are used to supplement other extraneous sentencing information**.") (emphasis in original).

Third, Morris pled no contest to the subsection of voluntary manslaughter which requires that she possess an **unreasonable** belief of justification.  *See* 18 Pa.C.S.A. § 2503(b) ("A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing [s]he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), **but h[er] belief is unreasonable**.") (emphasis added).  Morris cannot now claim that she stabbed the victim with a "well-founded" or "rightful" fear, especially since Morris does not challenge the validity of her
*(Footnote Continued Next Page)*

sentence are generally waived if not raised at sentencing hearing or in motion to modify sentence); *see also* Pa.R.A.P. 302.

To the extent that Morris' argument—that the trial court failed to distinguish her case from a typical voluntary manslaughter case when sentencing her above the aggravated range—addresses the question of whether the court relied on sufficient reasons to deviate from the Pennsylvania Sentencing Guidelines, we find this issue is meritless. Indeed, contrary to Morris' claims, the trial court noted factors specific to Morris' case showing how it was atypical—thereby justifying an aggravated-range sentence—and reiterated those factors in its Rule 1925(a) opinion, specifying that: (1) Morris' crime was a long time in the making; (2) Morris had apparent premeditated ill will towards the victim; (3) Morris took no remedial measures where she knew she had mental health issues and knew she wanted to kill the victim; and (4) several children were in the home at the time that Morris kept a knife in the bathroom. *See* Trial Court Opinion, 1/20/23, at 6-8.

Judgment of sentence affirmed.

---

plea and she was convicted of a crime specifying that she maintain an **unreasonable** belief of her justification. *See Commonwealth v. Jabbie*, 200 A.3d 500, 505 (Pa. Super. 2018) ("[I]n terms of its effect upon a case, a plea of *nolo contendere* is treated the same as a guilty plea. Generally, upon entry of a guilty plea, a defendant waives all claims and defenses other than those sounding in the jurisdiction of the court, the validity of the plea, and what has been termed the 'legality' of the sentence imposed.") (citations, quotation marks, and brackets omitted).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>04/16/2024</u>