J-S26028-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DURELL HERMAN COTTON JR. | : | |
| | : | |
| Appellant | : | No. 1566 MDA 2021 |

Appeal from the PCRA Order Entered November 5, 2021
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0005729-2015

BEFORE:   KUNSELMAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.:          **FILED: DECEMBER 6, 2022**

Durell Herman Cotton, Jr. (Appellant) appeals *pro se* from the order entered in the York County Court of Common Pleas, dismissing his first, timely Post Conviction Relief Act[1] (PCRA) petition.  Appellant was convicted by a jury of first-degree murder, attempted murder, conspiracy, and aggravated assault, and ultimately sentenced to an aggregate term of 59 1/2 years' to life imprisonment.[2]  Appellant now claims counsel was ineffective for failing to challenge his aggregate sentence.  We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

[2] 18 Pa.C.S. §§ 2502(a), 901(a), 903(a), and 2702(a)(1), respectively.  As we discuss ***infra***, Appellant was tried jointly with Elvin Rafael Mateo (Co-Defendant).

The Commonwealth alleged that on the night of October 15, 2013, Appellant[3] and Co-Defendant were in a maroon SUV vehicle when they fired gunshots into an occupied gold Buick Rendezvous vehicle at 128 Jefferson Avenue, York City. The rear seat passenger of the Buick, Jordan Breeland, was shot in the chest and died at the scene. The driver, Davon Brown, sustained "a gunshot to his left hand and a small wound on his right wrist" and survived. Trial Ct. Op., 2/13/17, at 3.[4] The front seat passenger, Timiere Crosby, was not injured. *See id.*

Shortly after 1:40 a.m. that same night, there was a report of shots fired "in the area of Belvidere and Market Street[s]." Trial Ct. Op., 2/13/17, at 4. At approximately 2:55 a.m., Pennsylvania State Police Trooper Shawn Panchik "located two possible suspects," for the shooting of Breeland and Brown, in "the area of Hartley and Philadelphia Street[s]." *Id.* The suspects, both wearing black jackets,

> were seen throwing handguns as they fled from police. [They] were apprehended . . . and both handguns were eventually recovered. . . .
>
> Dashboard surveillance was utilized in determining what actor threw which gun when they were fleeing from police. [Appellant] was later determined to have attempted to dispose of a Smith and Wesson 10-milimeter handgun and Co-Defendant . . . attempted to dispose of a .357 Rossi handgun. . . .

---

[3] At the time of the shooting, Appellant was 17 years old.

[4] The opinion was dated February 10th but docketed and timestamped on February 13th.

- 2 -

*Id.* at 4-5. Additionally, gunshot residue was found on both Appellant's and Co-Defendant's clothing and hands. *Id.* at 5.

Later that same day, October 16, 2013, Belinda Akers reported to the Lower Windsor Police Department that the night before, she loaned her vehicle, a maroon Mercury Mountaineer SUV, to a young black male. Trial Ct. Op., 2/13/17, at 5-6.

> [One] hour after the shooting [involving the Buick,] the male called a friend of [Akers] and told her where [her maroon SUV] was parked. [Akers] located her vehicle with the [rear window shattered.]
>
> Akers identified [Appellant] from an eight . . . person photo line-up as . . . the black male she loaned her SUV to on the night of the murder.

*Id.* at 6 (paragraph break added).

Meanwhile, a witness to the shooting, Thomas Hoke, heard gunshots and "observed a maroon or red [ ] SUV occupied by two black males [leave] the area of the shooting at a high rate of speed heading towards Philadelphia Street. One of the vehicle's occupants was wearing a black jacket." *See* Trial Ct. Op., 2/13/17, at 5. When shown photographs of Akers' SUV, Hoke said "it appeared to be the same color and body type [as] the vehicle he observed fleeing the scene immediately after the shooting." *Id.* at 6.

One year and nine months after the shooting, in July of 2015, police interviewed Raymond Bruno-Carrasquillo. *See* Trial Ct. Op., 2/13/17, at 6; N.T., 5/18/16, at 430. He had known Appellant and Co-Defendant almost his

whole life, and in October of 2013, he was with them "[a]lmost every day," selling drugs together. N.T., 5/18/16, at 407-08, 411.

> Bruno-Carrasquillo was with [Appellant] just prior to the shooting and was with both defendants on later dates where details of the murder were discussed. [Co-Defendant] told Bruno-Carrasquillo that they were "lurking" for targets from the Parkway gang, [which the victims] Breeland and . . . Brown were allegedly associated. [Bruno-Carrasquillo explained that "lurking" means "rid[ing] around looking for specific targets."[5] Co-Defendant] told Bruno-Carrasquillo that on the night of the alleged incident [they] were in a SUV that [Appellant] "rented" from an addict. [Co-Defendant] further stated to Bruno-Carrasquillo that they had come across a gold color SUV driven by . . . Brown and [Co-Defendant] had a .357 handgun while [Appellant] possessed a 10-milimeter handgun. [Co-Defendant] stated that he had fired into the driver's and passenger side of the vehicle. Additionally, [Co-Defendant] said that later that same evening police chased both defendants and they attempted to throw away their guns.

Trial Ct. Op., 2/13/17, at 6-7.

Both Appellant and Co-Defendant were charged with murder, attempted murder, conspiracy, and related offenses. The charges proceeded to a joint, multi-day trial against both defendants, commencing May 16, 2016.[6] Appellant was represented by John M. Hamme, Esquire (Trial Counsel).[7]

---

[5] N.T., 5/18/16, at 418.

[6] Notably, Bruno-Carrasquillo testified as a Commonwealth witness and, disclosed he was facing criminal charges in five unrelated matters, hoped his testimony would lead to leniency, but he was not given any promises by the Commonwealth. N.T., 5/18/16, at 408-11.

[7] We note the same attorney represented Appellant at trial and on direct appeal. For purposes of our review, we refer to him as "Trial Counsel."

Neither Appellant nor Co-Defendant testified or presented evidence. The jury found Appellant guilty of the first-degree murder of Breeland, conspiracy to commit the first-degree murder of Breeland, attempted murder of Brown, and aggravated assault of Brown. On August 29, 2016, the trial court imposed the following sentences: a term of 45 years to life imprisonment for the first-degree murder conviction, a consecutive term of 20 to 40 years' incarceration for the attempted murder conviction, and a concurrent term of 20 to 40 years' imprisonment for the conspiracy offense.[8]

Appellant filed post-sentence motions on September 7, 2016, claiming that there was insufficient evidence to support his convictions, the verdict was against the weight of the evidence, the court erred when it used a prior record score (PRS) of three when his actual PRS was zero for sentencing purposes, and the court failed to consider his age and opportunity for rehabilitation when it imposed the sentences. The trial court denied Appellant's post-sentence motions on October 13, 2016.

On October 31, 2016, Appellant filed a post-sentence motion for extraordinary relief, which again requested the trial court to re-sentence using

---

[8] The aggravated assault conviction merged with the attempted murder conviction for sentencing purposes. Appellant received 392 days as credit for time served. **See** N.T., 8/29/16, at 13-14

the correct PRS of one.[9]  On November 9, 2016, the court held a hearing to address the motion and re-sentenced based on the proper PRS.  The court then vacated Appellant's previous sentence imposed as to first-degree murder conviction, and sentenced him to a term of 39 1/2 years' to life imprisonment.[10]

Appellant then filed a direct appeal,[11] and a panel of this Court affirmed the judgment of sentence on October 10, 2017.  *See Commonwealth v. Cotton*, 1843 MDA 2016 (unpub. memo) (Pa. Super. Oct. 10, 2017), *appeal denied*, 771 MAL 2017 (Pa. April 17, 2018).  The Pennsylvania Supreme Court denied his petition for allowance of appeal on April 17, 2018.

Appellant filed a *pro se*, timely PCRA petition on March 25, 2019, alleging, *inter alia*: (1) Trial Counsel was ineffective for stipulating to facts at trial without Appellant's consent and thereby denying Appellant of his confrontation right pursuant to the Sixth Amendment of the United States Constitution; (2) counsel was ineffective for failing to meaningfully communicate with Appellant before the start of trial; and (3) counsel was

_____

[9] The Commonwealth acknowledged Appellant's PRS was incorrect and provided Trial Counsel with a correct copy of Appellant's sentencing guidelines. *See* Appellant's Post Sentence Motion for Extraordinary Relief, 10/31/16, at Exhibit A.

[10] The consecutive sentence of 20 to 40 years' incarceration for the attempted murder conviction did not change.

[11] On direct appeal, Appellant only raised sufficiency and weight claims.

ineffective for failing to investigate and interview potential witnesses for the defense. *See* Appellant's Petition for Habeas Corpus and Statutory Post Conviction Relief, 3/25/19, at 4-28. Counsel, Charles J. Hobbs, was appointed, who then submitted a petition to withdraw. On August 9, 2019, the court granted counsel's request and appointed new counsel, David E. Cook, Esquire. On October 25, 2019, Attorney Cook filed a motion for an extension of time to review the matter, which the PCRA court granted. However, on October 13, 2020, the PCRA court terminated Attorney Cook's appointment due to a lack of communication and involvement in Appellant's PCRA matter. *See* Order Termination PCRA Counsel's Appointment and Appointing New PCRA Court, 10/13/20, at 1-2 (unpaginated). The PCRA court then appointed new counsel, Brian A. McNeil, Esquire. *See id.* at 2 (unpaginated).

After receiving several extensions, Appellant filed an amended, counseled PCRA petition on April 15, 2021. In the petition, he argued: (1) Trial Counsel was ineffective for failing to investigate the possibility of presenting one of the victims, Brown,[12] as a witness; (2) Trial Counsel was

---

[12] Attached to his petition, Appellant included a Pa.R.Crim.P. 902(A)(15) certification from Brown. Brown averred that he told investigating officers that Appellant was not one of the shooters, he was never contacted by trial counsel, and if counsel had contacted him, he would have been willing to testify on Appellant's behalf. *See* Appellant's Amended Post-Conviction Relief Act Petition, 4/15/21, at Appendix C ("Rule 902(A)(15) Certification of Davon Brown").

ineffective for failing to raise the argument that the trial court imposed a *de facto* life sentence without the possibility of parole[13] which was illegal because Appellant was a juvenile at the time of the shooting; and (3) Trial Counsel was ineffective for failing to challenge the discretionary aspects of the aggregate sentence as it was excessive in light of Appellant's rehabilitative needs. ***See*** Appellant's Amended Post-Conviction Relief Act Petition, 4/15/21, at 18-43.

A PCRA evidentiary hearing was held on September 10, 2021. Brown, Appellant, and Trial Counsel all testified. On November 5, 2021, the PCRA court issued the underlying order denying Appellant relief, along with an opinion. Appellant timely appealed and complied with the court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. On February 2, 2022, the court filed a Pa.R.A.P. 1925(a) statement.

Appellant raises one issue for our review:

Did the [PCRA] court err in denying [Appellant]'s amended [PCRA p]etition where appellate counsel was ineffective in failing to challenge [Appellant]'s aggregate sentence of 59 1/2 years' to lifetime incarceration — including consecutive terms — for offenses from when [he] was a juvenile and was alleged to have acted only as a driver?

Appellant's Brief at 4.

We begin with our well-settled standard of review:

Our standard of review of the denial of a PCRA petition is limited to examining whether the court's determination is supported by

_____

[13] As we discuss ***infra***, the court did not impose a life sentence without the possibility of parole.

- 8 -

the evidence of record and free of legal error. This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. Further, the PCRA court's credibility determinations are binding on this Court, where there is record support for those determinations.

*Commonwealth v. Timchak*, 69 A.3d 765, 769 (Pa. Super. 2013) (citations omitted). Moreover, because Appellant's sole claim on appeal concerns ineffective assistance of counsel, we consider the following:

> Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. In Pennsylvania, we have refined the *Strickland* [*v. Washington*, 466 U.S. 668 (1984)] performance and prejudice test into a three-part inquiry. *See* [*Commonwealth v.*] *Pierce*[, 527 A.2d 973 (Pa. 1987)]. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. If a petitioner fails to prove any of these prongs, his claim fails. Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. Where matters of strategy and tactics are concerned, a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.

*Commonwealth v. Charleston*, 94 A.3d 1012, 1019 (Pa. Super. 2016). Moreover, "[a] court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the ineffectiveness test, the court may

proceed to that element first." ***Commonwealth v. Tharp***, 101 A.3d 736, 747 (Pa. 2014) (citation omitted).

In his sole argument on appeal, Appellant claims that Trial Counsel was ineffective in failing to argue that his aggregate sentence "was excessive where it gives him no realistic opportunity at rehabilitation." Appellant's Brief at 18. He contends:

> Although it no longer matters for constitutional purposes whether [Appellant]'s sentence is a *de facto* sentence of life without the possibility of parole,[14] this does not excuse [Trial Counsel]'s

---

[14] Briefly, we note the relevant case law concerning juvenile sentencing. In ***Roper v. Simmons***, 543 U.S. 551 (2005), the United States Supreme Court concluded that the Eighth Amendment of the United States Constitution precluded the death penalty for juveniles. In ***Graham v. Florida***, 560 U.S. 48 (2010), the Supreme Court held that the Eighth Amendment prohibits life imprisonment without parole (LWOP) for juvenile offenders who did not commit homicide. Then, in ***Miller v. Alabama***, 567 U.S. 460 (2012), the Supreme Court concluded that a mandatory sentence of LWOP for those under the age of 18 at the time of their crimes violated the Eighth Amendment's prohibition of cruel and unusual punishments. ***Id.*** at 465. ***See Montgomery v. Louisiana***, 577 U.S. 190 (2016) (holding ***Miller*** applies retroactively). ***See also Commonwealth v. Batts***, 163 A.3d 410, 452 (Pa. 2017) ("***Batts II***") (concluding that "in Pennsylvania, a faithful application of the holding in ***Miller***, as clarified in ***Montgomery***, requires the creation of a presumption against sentencing a juvenile offender to [LWOP].").

However, in ***Jones v. Mississippi***, 141 S.Ct. 1307, 1321-23 (U.S. 2021), the Supreme Court narrowed the ***Miller*** decision, stating the lower court was not required to make a specific finding of incorrigibility before sentencing a juvenile defendant who commits murder to LWOP, but that individual states may continue to require such explicit findings. ***See Commonwealth v. Felder***, 269 A.3d 1232, 1246 (Pa. 2022) (recognizing abrogation of ***Batts II*** and holding: (1) "when sentencing juvenile homicide offenders from this point forward, sentencing courts are required to consider only the relevant sentencing statutes, which will guarantee that sentencer considers the juvenile's youth and attendant characteristics as required by

*(Footnote Continued Next Page)*

failure to mount a discretionary [aspect of sentencing] challenge where [Appellant] was a juvenile at the time of the offenses, the Commonwealth alleged he acted only as the driver, and the record includes other strong indicia of rehabilitative potential.

*Id.*

Appellant specifically asserts that the underlying claim has "arguable merit," because his aggregate sentence was unduly harsh and excessive in light of the following: (1) he was 17 years old at the time of the shooting; (2) he only acted as the driver which was "reinforced by the fact that the gun the Commonwealth claimed [he] possessed did not fire 'any of the discharged ammunition components submitted in [the] case[;]'" and (3) he exhibited rehabilitative potential based on the fact that he graduated high school, had

_____

*Miller*" and (2) "[s]o long as the sentence imposed is discretionary and takes into account the offender's youth, even if it amounts to a *de facto* life sentence, *Miller* is not violated.").

It merits mention that Appellant did not receive a life sentence, but rather received a "sentence under the newly-promulgated sentencing guidelines." N.T., 9/10/21, at 19. *See* 18 Pa.C.S. § 1102.1(a)(1) (providing that juveniles who are 15 years of age or older, but younger than 18 years of age, who are convicted for first-degree murder after June 24, 2012, "shall be sentenced to a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 35 years to life."). The Commonwealth did not seek a LWOP sentence. *See* 18 Pa.C.S. § 1102.1(b) (stating "Reasonable notice to the defendant of the Commonwealth's intention to seek a sentence of life imprisonment without parole under subsection (a) shall be provided after conviction and before sentencing."). Therefore, the trial court applied "the traditional sentencing considerations under 42 Pa.C.S. § 9721(b) of the Sentencing Code when fashioning its sentence." *Commonwealth v. Summers*, 245 A.3d 686, 693 (Pa. Super. 2021) (citation omitted).

a good childhood with no abuse, and had strong family support. Appellant's Brief at 20 (citations omitted).

As for whether there was a "reasonable basis" for counsel's actions, Appellant states that even though he may not have requested counsel to raise the issue on appeal, counsel said he would have raised it if Appellant asked him to do so and "the failure to assert a meritorious claim could not conceivably have helped [him] and thus cannot be shielded as a strategic decision." Appellant's Brief at 27-28. Appellant pointed out that counsel raised it on three separate occasions (at sentencing, in the post sentence motion, and during argument at resentencing) but then "dropp[ed] the argument on direct appeal." *Id.* Moreover, he alleges that while counsel stated that a reason for not raising the claim was because Appellant did not receive a life sentence, Appellant contends "the instant claim does not depend on whether [his] sentence qualifies as a life sentence, as it concerns the denial of [his] rehabilitative needs and potential — not the constitutionality of his sentence." *Id.* at 27.

Regarding whether there is a reasonable probability that but for counsel's actions, the outcome of the proceedings would have been different, Appellant reiterates his prior argument, asserting that based on his age and limited involvement in the shooting, and the fact that the court "made no mention of [his] rehabilitative potential at either original sentencing or resentencing[, t]here [was] a reasonable probability that raising this issue on

direct appeal would have brought [him] relief." Appellant's Brief at 29. Appellant states that while the court mentioned in its Rule 1925(a) opinion that his age and opportunity for rehabilitation were considered,

> the failure to discuss these key points — even through a statement that [his] behavior or life circumstances reflected a *lack* of rehabilitative potential — is striking.
>
> This is especially so where the court never identified any particular reason, at either sentencing hearing, why a lesser aggregate sentence or concurrent terms would be inappropriate. In fact, the closest the court came to finding aggravation was to dwell on the fact that murder is a serious crime that carries devastating consequences. Of this there can be no doubt. But it is also true of *every* case of murder, and thus provides no justification for a harsher sentence in this case.

*Id.* at 31-32 (emphasis in original & citations omitted). Appellant maintains that **Miller** and **Batts II** were persuasive authority at the time of his direct appeal and that "he would have been able to take advantage of **Batts II** in arguing [his] aggregate sentence improperly denied him any meaningful opportunity of rehabilitation." **Id.** at 33. Lastly, he states that he did not waive the underlying issue, he properly preserved it in his September 7, 2016, post-sentence motion and did not need to raise it again after resentencing. *Id.* at 34-35.

This Court has previously held that "claims implicating the discretionary aspects of sentencing raised in the context of an ineffectiveness claim are cognizable under the PCRA." **Commonwealth v. Sarvey**, 199 A.3d 436, 455 (Pa. Super. 2018) (citations omitted).

> It is well-settled that a challenge to the discretionary aspects of a sentence must present a substantial question. A sentencing court's decision to impose consecutive as opposed to concurrent sentences generally does not present a substantial question. ***See Commonwealth v. Zirkle***, 107 A.3d 127, 133 (Pa. Super. 2014) (noting that the decision to impose consecutive or concurrent sentences lies within the discretion of the trial court). However, "the imposition of consecutive, rather than concurrent, sentences may raise a substantial question . . . where the aggregate sentence is unduly harsh, considering the nature of the crimes and length of imprisonment." ***Commonwealth v. Moury***, 992 A.2d 162, 171-172 (Pa. Super. 2010)

***Id.*** at 455-56 (footnotes & some citations omitted).

As stated above, and in pertinent part, Appellant was convicted of first-degree murder and attempted murder. The court imposed a term of 39 1/2 years to life imprisonment for the first-degree murder conviction and a term of 20 to 40 years' incarceration as to the attempted murder conviction. Appellant does not argue that the individual sentences were not within the standard guideline range.[15] ***See*** Appellant's Brief at 30. Rather, Appellant challenges the aggregate sentence, which was 59 1/2 years to life imprisonment because the court imposed the sentences consecutively.

> Pursuant to 42 Pa.C.S. § 9781(c)(2), this Court shall vacate a sentence where "the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would clearly be unreasonable."

---

[15] Appellant's PRS was one. The offense gravity score (OGS) for first-degree murder is 15, and the standard guideline range is 39 1/2 years to life imprisonment. ***See*** Appellant's Post Sentence Motion for Extraordinary Relief at Exhibit A. The OGS for attempted murder is 14, and the standard guideline range is 8 1/2 to 20 years' imprisonment. ***See id.*** Appellant's sentence was at the top end, but still within, the standard range for attempted murder.

> Pursuant to Section 9781(d), "the appellate courts must review the record and consider the nature and circumstances of the offense, the sentencing court's observations of the defendant, the findings that formed the basis of the sentence, and the sentencing guidelines[,]" with particular concern for whether the defendant received an individualzed sentence. ***Commonwealth v. Bowen***, 975 A.2d 1120, 1123-1124 (Pa. Super. 2009).

> \*     \*     \*

> "An unreasonable decision from the sentencing court would be one that is 'irrational' or 'not guided by sound judgment.' As we concluded in ***Commonwealth v. Williams***, 69 A.3d 735, 742 (Pa. Super. 2013), "by any measure employed by a civilized society, the severity of [a]ppellant's sentence was disproportional to her conduct" and, thus, clearly unreasonable.

***Sarvey***, 199 A.3d at 456 (some citations & footnote omitted).

A review of the record reveals that at the original sentencing hearing on August 29, 2016, Trial Counsel attempted to highlight certain mitigating factors, noting that because Appellant "was 17 at the time of th[e shooting], he is not looking at an automatic life sentence." N.T., 8/29/16, at 3. Trial Counsel also argued that because Appellant was the driver, and not a shooter, "a sentence at the lower end of the standard range [was] more appropriate than something in the middle" and that "the facts of this case as they were presented by the Commonwealth indicate[d] that that sentence would be rather more punitive than rehabilitative." ***Id.*** at 5. Counsel indicated he had previously explained to Appellant the applicable standard sentencing ranges, Section 1102.1(a)(1), and the mandatory minimum sentence of 35 years. ***Id.*** at 4. Appellant did not assert his right to allocution at the proceeding. ***Id.*** at 6. The court then heard from Breeland's mother and girlfriend, who was the

- 15 -

mother of his child. *Id.* at 7-9. Additionally, the Commonwealth argued that the shooting had an impact on the community, that the co-defendants were on "a mission to kill" and were involved in a shooting earlier that day. *Id.* at 11. The Commonwealth claimed that the "cold, calculated method of this murder combined with the severe impact in [the] community" necessitated consecutive sentences. *Id.* Prior to imposing Appellant's sentence, the trial court stated:

> The Court has reviewed the pre-sentence investigation report, the amended as well as the original report, which was also provided to counsel.
>
> *     *     *
>
> We have heard from the mother of the decedent, Jordan Breeland, as well as his girlfriend and mother of his child. The defense argues that the sentences for the murder of Jordan Breeland and the attempted murder of Davon Brown should not be consecutive and that the sentences recommended by adult probation are basically excessive, and the defense is requesting sentencing in the lower range of the guidelines.
>
> The Commonwealth disagrees, believes that the sentences basically as outlined by the pre-sentence investigation report would be appropriate and should be consecutive.
>
> The Court has certainly read thoroughly the report that was prepared. We presided over the trial. We are familiar with the facts of the case. [Appellant] . . . has elected not to speak on his behalf.
>
> The taking of a life is perhaps the most serious of all crimes. There is no chance to recover from this crime and move forward and make a better life for the victim. It is a total loss, and it is not singular in its destruction and devastation. It forever affects the lives of everyone who knew the victim and loved the victim.

The friends and family are left to find a way to move forward with their own lives. Time does not stand still and give them an opportunity to recover. There is no second chance for the victim or his family.

The justice that comes from this courtroom does not begin to cover the loss that they suffer and continue to suffer on a daily basis, but it is all that we can offer.

*Id.* at 12-13.

Trial Counsel renewed the instant issue in Appellant's September 7, 2016, post-sentence motion. *See* Post-Sentence Motion, 9/7/16, at 6 (unpaginated) ("[Appellant] avers that the punitive nature of the above sentences far outweighs the rehabilitative nature of the sentence, especially in light of [Appellant]'s age and opportunity for rehabilitation."). Additionally, at the November 6, 2016, hearing regarding Appellant's post-sentence motion for extraordinary relief, Trial Counsel asked for a sentence that

would allow [Appellant] to rehabilitate himself in a state correctional system.

Obviously, no matter what sentence we receive today, [Appellant] will be serving a lengthy prison sentence, at least 35 years. I believe that any sentence longer than that is more punitive than rehabilitative. I believe essential[ly], if we give [Appellant] a life sentence, it deprives him of the opportunity to rehabilitate himself to a functioning member of society.

Again, even when it's a 35-year-sentence, his current age is 20-years-old, so we're looking – he will be an older man, middle aged or past, even with the mandatory minimum sentence, which I believe is the most equitable resolution in this matter for a mandatory minimum sentence of 35 years.

N.T., 11/6/16, at 4-5.[16]

At the September 10, 2021, PCRA hearing, Trial Counsel testified that he could not recall if Appellant made a request to challenge the sentence on direct appeal, but if Appellant "would have asked [counsel, he] would have challenged it." N.T., 9/10/21, at 18. Counsel acknowledged that he was "aware of the concept of a *de facto* life sentence," and would not "argue" that Appellant's sentence amounted to one. *Id.* at 19. When asked if he thought challenging the sentence would have conflicted with the sufficiency issues counsel did raise on direct appeal, he stated: "No. To my view, they were separate issues." *Id.* On cross-examination, Trial Counsel was questioned if there was "any sentencing caselaw that was contrary to . . . the [trial court]'s order[,]" and he answered, "No, there wasn't." *Id.* at 20.

Appellant also testified at the PCRA hearing. Though no one specifically inquired about a discretionary aspects of sentence challenge, Appellant answered in the negative when asked if he ever told Trial Counsel "not to appeal [his] sentence[.]" N.T., 9/10/21, at 7-8.

In addressing Appellant's claim, the PCRA court noted the following:

> At the original sentencing hearing the [c]ourt had the benefit of a Pre-Sentence Investigation (PSI) report prepared by adult probation. The [c]ourt also heard the arguments of counsel and victim impact statements. [Appellant] elected not to make a

---

[16] As the PCRA court recognized in its opinion, the issue was raised at the trial level. *See* PCRA Ct. Op., 2/22/22, at 2-3.

statement. [Appellant]'s age and his opportunity for rehabilitation were a significant consideration by [the c]ourt.

PCRA Ct. Op., 2/22/22 at 4.

The PCRA court further opined:

The length of the sentence is not illegal due to this Court using the standard guidelines at the time of sentencing. [Appellant]'s status as a juvenile was taken into consideration as one of the many factors when this Court sentenced him. This Court had the discretion to run counts consecutive and/or concurrent. . . .

\* \* \*

Counsel argued for a mitigated range at the time of resentencing due to [Appellant]'s age and his involvement in the matter as the driver, not the shooter.

Based upon the arguments made by counsel at the first and second sentencing hearing, [the PCRA court found Appellant] has not established a claim of ineffectiveness as it relates to [his] sentence.

Opinion in Support of Order Denying Appellant's PCRA Motion, 11/5/21, at 28-31 (citation omitted).

Here, Appellant failed to satisfy the "arguable merit" prong of the ineffectiveness test. Because the trial court had the benefit of a PSI, we must presume that it was aware of the sentencing factors it contained — including Appellant's age, background, and rehabilitative potential. *See **Commonwealth v. Ventura***, 975 A.2d 1128, 1135 (Pa. Super. 2009) ("Our Supreme Court has determined that where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so

informed, its discretion should not be disturbed."). The court was fully aware of Appellant's involvement in the shooting. The record clearly reflects that the court placed particular emphasis on the following factors: Appellant's personal history, his level of culpability, the victim-impact statements, the threat to the community, and the Commonwealth's sentence recommendation.[17] Moreover, while it did not explicitly mention Appellant's opportunity for rehabilitation at the sentencing proceeding, the court later indicated it was a "significant consideration." PCRA Ct. Op., 2/22/22 at 4.

Based on these circumstances, we cannot conclude that Appellant has established the sentence imposed was unreasonable. While Appellant attempts to downplay his involvement, the trial testimony established that although the bullets from Appellant's gun may not have hit the victim, he did fire the weapon. Moreover, as the Commonwealth pointed out, Appellant was involved in an earlier shooting that day – stating that "after being involved in one shooting where someone [did not] die, [Appellant and his co-defendant] chose to go out on a mission to kill other people, and they were successful, and on this night, they killed someone else." N.T., 8/29/16, at 11.

Furthermore, the court was within its discretion to impose consecutive sentences. **See Commonwealth v. Clary**, 226 A.3d 571, 581 (Pa. Super.

---

[17] The court was informed about the appropriate guideline ranges at the time of resentencing.

2020) ("defendants convicted of multiple offenses are not entitled to a 'volume discount' on their aggregate sentence") (citation omitted). As such, we conclude Appellant failed to establish that his underlying claim had arguable merit, and we need not address his claim further. ***See Commonwealth v. Washington***, 927 A.2d 586, 603 (Pa. 2007) (finding counsel will not be deemed ineffective for failing to raise meritless claim); ***see also Tharp***, 101 A.3d at 747. Accordingly, we affirm the PCRA court's order denying Appellant relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/6/2022