J-S08016-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DSHAWN WILSON | : | |
| | : | |
| Appellant | : | No. 3232 EDA 2023 |

Appeal from the Judgment of Sentence Entered June 16, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0008274-2019

BEFORE:    DUBOW, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                          **FILED APRIL 17, 2025**

Appellant Dshawn Wilson appeals from the Judgment of Sentence imposed by the Philadelphia Court of Common Pleas after a jury convicted him of aggravated assault, rape, sexual assault, and strangulation.[1]  He challenges the weight and sufficiency of the evidence as well as the discretionary aspects of his aggregate sentence of 15 to 30 years' incarceration.  After careful review, we affirm.

The relevant factual and procedural history, gleaned from the trial court opinion and the certified record, is as follows.  Appellant and the Victim, once romantically involved, share a child together.  On May 15, 2019, the Victim's

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2702(a)(1), 3121(a)(1), 3124.1, and 2718(a)(1), respectively.

21st birthday, Appellant went to the Victim's house to see their child and an argument ensued. When the Victim refused to respond to Appellant's questions about her personal life, Appellant grabbed her by the face, slammed her down on the floor, and repeatedly banged her head into the tiled kitchen floor. The Victim fought back, and Appellant put his hands around her throat and applied pressure until she passed out. As she regained consciousness, Appellant was removing her pants and underwear and, despite the Victim's protests, he forced his penis into her vagina. Appellant left shortly thereafter, and the Victim called 911. Police officers brought her to the hospital where investigators took photographs showing bruising around both eyes and on the side of her head, as well as bruising, abrasions, and lacerations on the back of her neck. The Victim did not undergo a rape kit examination because she felt "very violated, very vulnerable, [she] didn't want to be touched in [her] private area anymore." N.T., 4/4/23, at 73. Following her hospital treatment, the Victim provided a statement to Detective Valerie Gonzalez of the Philadelphia Police Department's Special Victim's Unit. The Commonwealth charged Appellant with, *inter alia*, the above crimes.

Appellant proceeded to a jury trial on April 4, 2023. The Victim testified consistently with the above facts. She also testified that following the assault, Appellant grabbed the baby and when she begged him to hand the child to her, he told her that "if he couldn't see his daughter that he would kill me." N.T. at 40-41. The Victim also testified that she and Appellant did not have

a formal custody agreement because Appellant was welcome to come over anytime to see the baby. N.T. at 35-36, 52-53.

The Commonwealth also presented testimony from the police officer who responded to the Victim's 911 call and Detective Gonzalez. Appellant did not testify but did present three character witnesses.

The jury convicted Appellant of the above crimes. The court deferred sentencing pending a pre-sentence report and a mental health evaluation.

On June 16, 2023, the court sentenced Appellant to 10-20 years' incarceration on the rape conviction, a concurrent term of 10-20 years' incarceration on the aggravated assault conviction, and a consecutive sentence of 5-10 years' incarceration on the strangulation conviction.[2]

Appellant filed post-sentence motions which the court denied following a hearing. Appellant timely appealed and both Appellant and the court complied with Pa.R.A.P. 1925.

* * *

Appellant provides the following Statement of Questions Involved, which we have reordered for ease of disposition:

A. Was the evidence insufficient to sustain the guilty verdicts for the following reasons:

i. Rape and sexual assault: there was no material evidence of any sexual intercourse by forcible compulsion;

ii. Aggravated assault: there was no evidence that [A]ppellant

_____

[2] The sexual assault conviction merged for purposes of sentencing.

caused serious bodily injury or attempted to cause serious bodily injury;

iii. Strangulation: there was no material evidence that [A]ppellant knowingly or intentionally applied pressure to the [Victim's] throat/neck in order to impede her breathing or blood circulation?

B. Were the verdicts against the weight of the evidence for the following reasons:

i. Rape and sexual assault: [Victim's] testimony was not credible as alleged injuries of forced sexual intercourse and physical assault were lacking and actual injuries were inconsistent to her testimony, and she refused a rape kit despite receiving medical attention. There [sic] lacked forensic evidence to corroborate the [Victim's] inconsistent and contradictory testimony and her motive to fabricate was regarding a dispute regarding their child;

ii. Aggravated assault: [Victim's] testimony was not credible as there was [sic] serious bodily injury and the actual injuries were materially inconsistent to any attempt to cause serious bodily injury;

iii. Strangulation: [Victim's] testimony was not credible as alleged injuries fell woefully short of proving beyond a reasonable doubt that appellant applied pressure to [Victim's] throat/neck with such force that she lost consciousness?

C. Did the trial court abuse discretionary aspects of sentencing in fashioning a partially consecutive-in-nature sentence that was much more than necessary to protect the public, vindicate the [Victim] and punish and rehabilitate [A]ppellant. Additionally, the statutory maximum sentences on rape and aggravated assault were excessive in light of [A]ppellant's meaningful work history, community involvement and support, familial support, need for and great potential for complete rehabilitation?

Appellant's Br. at 5-6 (reordered).

* * *

Appellant challenges the sufficiency of the evidence supporting each of his convictions. In addressing this challenge, our well-settled standard of review is *de novo*, and our scope of review is limited to the evidence admitted at trial viewed in the light most favorable to the Commonwealth as verdict winner. **Commonwealth v. Rushing**, 99 A.3d 416, 420-21 (Pa. 2014). We determine "whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all elements of the offense beyond a reasonable doubt." **Commonwealth v. May**, 887 A.2d 750, 753 (Pa. 2005). The factfinder, "while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." **Commonwealth v. Miller**, 172 A.3d 632, 640 (Pa. Super. 2017). "Any doubts regarding a defendant's guilt may be resolved by the factfinder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." **Commonwealth v. Ratsamy**, 934 A.2d 1233, 1236 n.2 (Pa. 2007).

The Commonwealth "may sustain its burden by means of wholly circumstantial evidence." **Commonwealth v. Lynch**, 72 A.3d 706, 708 (Pa. Super. 2013). "Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence." **Id.** (citation omitted). "Significantly, we may not substitute our judgment for that of the fact finder;

thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld." ***Id.***

*

Appellant first challenges the sufficiency of the evidence supporting his Rape and Sexual Assault convictions. Appellant's Br. at 38-40. The Crimes Code defines Rape, in pertinent part, as follows: "A person commits a felony of the first degree when the person engages in sexual intercourse with a complainant ... by forcible compulsion." 18 Pa.C.S. § 3121(a)(1). "Forcible compulsion" is defined, in relevant part, as "compulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied." 18 Pa.C.S. § 3101. Forcible compulsion is "the exercise of sheer physical force or violence;" it also means "an act of using superior force, physical, moral, psychological or intellectual to compel a person to do a thing against that person's volition and/or will." ***Commonwealth v. Gonzalez***, 109 A.3d 711, 720–21 (Pa. Super. 2015). "A determination of forcible compulsion rests on the totality of the circumstances." ***Id***. at 721.

Notably, a victim's "uncorroborated testimony is sufficient to support a rape conviction." ***Id.***

Our crimes code defines sexual assault as follows:

Except as provided in section 3121 (relating to rape) or 3123 (involuntary deviate sexual intercourse), a person commits felony of the second degree when that person engages in sexual

- 6 -

intercourse or deviate sexual intercourse with a complainant without the complainant's consent.

18 Pa.C.S. § 3124.1.

In addressing Appellant's sufficiency challenge, the trial court concluded that the testimony "established that Appellant raped and sexually assaulted the Victim, attempted to cause serious bodily injury to her and strangled her." Tr. Ct. Op., 7/1/24, at 6.

> Specifically, Appellant grabbed the [Victim] by the face, slammed her to the floor, then repeatedly banged her head into the hard tile kitchen floor. N.T., 4/4/23, at 36,57,70. [Victim] was fighting back against Appellant, trying to get his hands off her, to no avail. [*Id*. at] 63. Appellant then grabbed the [Victim] with both hands around her throat and applied pressure, causing her to hardly be able to breathe and to pass out. [*Id*., at] 37-38, 57, 70. As she regained consciousness the [Victim] found Appellant removing her pants, ripping them in the process, removing her underwear and inserting his penis into her vagina, without her consent. [*Id.* at] 38-39, 58. As the [Victim] was crying while Appellant was penetrating her, Appellant told her to "stop crying and be quiet." [*Id.* at] 39.

*Id.*

The court concluded that "the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to meet all the necessary elements of the crimes of rape and sexual assault." *Id*. at 7.

Appellant argues that because the Victim refused to undergo a rape kit examination, the evidence was insufficient to prove that sexual intercourse occurred. Appellant's Br. at 39-40. He asserts that "[t]he complainant's incredible testimony with her motive to fabricate, the lack of corroborative evidence, and [A]ppellant's own good character, resulted in evidence that was

'pure conjecture' where there lacked proper proof of any sexual intercourse." *Id*. at 39. Appellant acknowledges that the testimony of a single witness may be sufficient to prove sexual assault but argues that without the Victim's consent to undergo a rape kit evaluation, the Commonwealth failed to prove that sexual intercourse occurred. *Id*. at 40. Appellant is, in fact, challenging the weight of the evidence.

Following our review of the record, we agree with the trial court that the evidence presented at trial met each of the elements of the Rape and Sexual Assault offenses. The testimony of the Victim, combined with the photographs of her injuries, and all reasonable inferences the jury drew therefrom, provided sufficient evidence to support the jury's determination that Appellant forced sexual intercourse upon the Victim without her consent. *See* N.Tat 29-73 (Victim's testimony); Commonwealth Exhs. C-2 A-G (photographs of Victim's injuries).

Appellant provides no legal authority to support his assertion that because the Victim declined to undergo an invasive rape kit examination, the Commonwealth did not prove that sexual intercourse occurred. Rather, he focuses on case law where the complaining witness's testimony was found incredible. *See* Appellant's Br. at 39 (*citing* ***Commonwealth v. Karkaria***, 625 A.2d 1167 (Pa. 1993). As noted above, a victim's testimony in a sexual assault case, if found credible by the factfinder, provides sufficient evidence to support the convictions. ***Walls***, 953 A.2d at 954. To the extent Appellant relies on his own conclusion that the Victim was not credible, the jury found

otherwise and his challenge to the jury's credibility determination implicates the weight, not the sufficiency, of the evidence.

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we conclude that sufficient evidence supports Appellant's Rape and Sexual Assault convictions. Appellant's argument, therefore, garners no relief.

\*

Appellant next contends that insufficient evidence supported his conviction for Aggravated Assault. Appellant's Br. at 40-41. Aggravated Assault occurs when an individual "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1). "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa. C.S. § 2301.

"A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a). "An attempt under § 2702(a)(1) requires a showing of some act, albeit not one causing serious bodily injury, accompanied by an intent to inflict serious bodily injury." *Commonwealth v. Matthew*, 909 A.2d 1254, 1257 (Pa. 2006).

Appellant argues that the injury the Victim sustained "was unremarkable, non-life threatening, included no permanent disfigurement, and was superficial and minor" and, therefore, the Commonwealth failed to prove Appellant committed aggravated assault or attempted aggravated assault. Appellant's Br. at 40. We disagree.

The evidence presented—the Victim's testimony that Appellant slammed her head on the hard-tiled kitchen floor multiple times, and photographs of Victim's black eyes and injuries to her neck—supported the jury's determination that Appellant attempted to cause serious bodily injury. *See* N.T. at 36-38 (Victim's testimony). Even if we were to agree that the Victim's injuries were non-life threatening, the evidence, viewed in the light most favorable to the Commonwealth, supports the jury's determination that by slamming the Victim's head repeatedly against the floor, Appellant "attempted to cause severe bodily injury" "intentionally, knowingly or recklessly" with extreme indifference to the Victim's life. 18 Pa.C.S. §§ 2702(a)(1), 901; *Matthew*, 909 A.2d at 1257. Accordingly, Appellant's claim warrants no relief.

\*

Appellant also challenges the evidence supporting his strangulation conviction. "A person commits the offense of strangulation if the person knowingly or intentionally impedes the breathing or circulation of the blood of another person by[, *inter alia*,] applying pressure to the throat or neck[.]" 18 Pa.C.S. § 2718(a)(1). "Infliction of a physical injury to a victim shall not be an element of the offense." *Id.* at § 2718(b). Accordingly, "[t]he lack of

physical injury to a victim shall not be a defense in a prosecution under this section." *Id*.

Further, "the uncorroborated testimony of a single witness is sufficient to sustain a conviction for a criminal offense, so long as that testimony can address and, in fact, addresses, every element of the charged crime." *Commonwealth v. Johnson*, 180 A.3d 474, 481 (Pa. Super. 2018).

Here, the Victim testified that Appellant put two hands around her neck and applied pressure so that she lost consciousness. N.T. at 37-38. In addition, photographs taken at the hospital show injury to her neck. Cmwlth Exh. 2f and 2g. Further, the Victim's hospital record indicates that emergency medical personnel diagnosed that she had been assaulted by, *inter alia*, manual strangulation. Cmwlth Exh. 3.

After acknowledging the holding of *Johnson*, *supra*, that the uncorroborated testimony of a victim may be sufficient to prove the offense, Appellant argues that "[t]he evidence presented at trial regarding [A]ppellant allegedly applying pressure to the complainant's throat/neck was of low quality and insufficient, [sic] that it requires the suspension of reality. Such a savage and unrestrained assault would most definitely have resulted in very serious bodily injury to the area where pressure was allegedly applied." Appellant's Br. at 42-43.

As the trial court observed, the "evidence demonstrated that Appellant applied pressure to the [Victim's] throat or neck, impeding her breath and circulation of blood and causing her to lose consciousness. This evidence was

sufficient to establish that Appellant committed the crime of strangulation." Tr. Ct. Op., 7/1/24, at 8. We agree.

Viewing the evidence in the light most favorable to the Commonwealth, as we must, we conclude that sufficient evidence supports the jury's determination that Appellant is guilty of Strangulation. The Victim's testimony, found credible by the jury, established that Appellant put his hands around her neck and squeezed until she passed out. Appellant's attempts to minimize his actions by opining on the extent of the Victim's physical injuries ignores the statutory language of Section 2718(b) noted above. Moreover, to the extent that Appellant's argument depends on his claim that the Victim should not have been believed and that her injuries were minimal, Appellant challenges the credibility and weight determinations of the jury. This sufficiency of the evidence claim, thus, fails.

* * *

Next, Appellant claims that each of his verdicts is against the weight of the evidence because the Victim "had credibility issues," and her testimony was "exaggerated or fabricated" as motivated by a "fear that Appellant would withhold their child due to child custody issues." Appellant's Br. at 30-36.

Our standard of review of a challenge to the weight of the evidence is well-established. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert,* 129 A.3d 536, 545 (Pa. Super. 2015) (citation omitted).

- 12 -

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Id.* at 545-46 (quoting **Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted)).

To prevail on a challenge to the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id.* at 546 (citation omitted).

The trial court here denied Appellant's post-sentence motion challenging the weight of the evidence after concluding that the verdict did not shock its conscience. Tr. Ct. Op. at 9.

Here, the jury carefully weighed the evidence and credited the [Victim's] testimony as to Appellant's conduct in reaching its verdicts. Having observed the [Victim] and the other evidence of guilt, the court's conscience is not at all shocked by those verdicts. To the contrary the verdicts are consistent with the overwhelming weight of the credible evidence that Appellant beat, strangled, raped and sexually assaulted the [Victim].

*Id.*

Appellant's challenge before this Court is based solely on his claim that the Victim is not to be believed. Appellant misunderstands this Court's standard and scope of review. The jury, as factfinder, determined that the

- 13 -

Victim's testimony was credible, and the trial court concluded the verdicts did not shock its conscience. Following our review, we discern that the court properly exercised its discretion. Accordingly, Appellant's weight claim fails to garner relief.

\* \* \*

Appellant next asserts that the court abused its discretion in sentencing him to an aggregate term of 15-30 years' incarceration. Appellant's Br. at 22-27. He asserts that in imposing the "statutory maximum terms of incarceration" and directing that his sentences run consecutively in part, the court imposed a sentence that failed to consider mitigating factors and imposed an overly punitive sentence that "ran counter [to] Pa sentencing norms." *Id*. at 27.

Appellant's argument challenges the discretionary aspects of his sentence. Challenges to the discretionary aspects of sentence are not appealable as of right. ***Commonwealth v. Leatherby***, 116 A.3d 73, 83 (Pa. Super. 2015). Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify the sentence; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth "a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence[;]" and (4) presenting a substantial

question that the sentence appealed from is not appropriate under the Sentencing Code. *Id.* (citation omitted).

Appellant timely appealed, preserved the issue in a post-sentence motion, and included a Rule 2119(f) Statement in his brief. We, thus, proceed to consider whether Appellant has raised a substantial question for our review.

We determine on a case-by-case basis whether an appellant has raised a substantial question regarding discretionary sentencing. ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id.* (citation and quotation marks omitted).

In his Rule 2119(f) Statement, Appellant avers his aggregate sentence of 15 to 30 years' incarceration was excessive because it "did not take into consideration the appellant's need for rehabilitation, and its consecutive nature [ ] was more than needed to protect the public[.]" Appellant's Br. at 18. He also suggests that the court imposed its sentence without consideration of the sentencing guidelines and the mitigating factors. *Id*. at 20. We conclude he raises a substantial question. ***See Commonwealth v. Swope***, 123 A.3d 333, 340 (Pa. Super. 2015) (concluding that a challenge of sentence as excessive because the court failed to consider mitigating factors and rehabilitative needs raises substantial question). We, thus, proceed to address the merits of Appellant's claim.

*

We consider the merits of Appellant's claims mindful that sentencing is vested in the sound discretion of the sentencing court, and we shall not disturb a sentence absent a manifest abuse of discretion. *Commonwealth v. Summers*, 245 A.3d 686, 692-93 (Pa. Super. 2021).

> In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Id.* (citation omitted).

Sentencing in Pennsylvania is individualized and requires the trial court to fashion a sentence that is consistent with, *inter alia*, "the rehabilitative needs of the defendant." *Commonwealth v. Baker*, 72 A.3d 652, 663 (Pa. Super. 2013) (quoting 42 Pa.C.S. § 9721(b)). Additionally, when sentencing to total confinement, the court must consider "the history, character, and condition of the defendant[.]" 42 Pa.C.S. § 9725.

Significantly, "[w]hen a sentencing court has reviewed a pre-sentence investigation report, we presume that the court properly considered and weighed all relevant factors in fashioning the defendant's sentence." *Baker*, 72 A.3d at 663 . Additionally:

> [i]n imposing sentence, the trial court is required to consider the particular circumstances of the offense and the character of the defendant. The trial court should refer to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation. However, where the sentencing judge had the

- 16 -

benefit of a presentence investigation report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.

*Commonwealth v. Fowler*, 893 A.2d 758, 766-67 (Pa. Super. 2006) (citing

*Commonwealth v. Boyer*, 856 A.2d 149, 154 (Pa. Super. 2004) ) (some

citations omitted).

At Appellant's sentencing proceeding, the parties agreed to the guideline calculations as set forth in the Commonwealth's sentencing memorandum.[3] After hearing counsel's arguments, the Victim's impact statement, and Appellant's allocution, the court stated the following before imposing its sentence:

> All right. I've considered the arguments of both counsel, the testimony of the two witnesses offered for the defense, the presentence report, the mental health evaluation report, the sentencing guidelines in this case. I've also considered the defendant's allocution, and I've reviewed the Commonwealth's sentencing memorandum.
>
> This [c]ourt[ has] considered the defendant's tragic personal history that includes history of mental health challenges, multiple foster homes after early loss of his parents, domestic violence, and the mother's substance abuse. The [c]ourt also has considered the fact the defendant seems to have had a strong work history.

_____

[3] The parties agreed prior to sentencing that for the Rape - Forcible Compulsion conviction, the OGS was 12, the PRS was 2, and the standard range guidelines suggested 60 to 78 months' incarceration +/- 12. For Sexual Assault, the OGS was 11, the PRS was 2, and the standard range guidelines suggested a term of incarceration of 48 to 66 months +/- 12. The Aggravated Assault conviction had an OGS of 11, a PRS of 2, and standard range suggested by the guidelines of 48 to 66 months' incarceration +/- 12. The Strangulation conviction carried an OGS of 9, a PRS of 2, and a standard range sentence of 24 to 36 months' incarceration +/- 12. Tr. Ct. Op., 7/1/24, at 10.

Now to the aggravating factors. The particular circumstances of the offense here are troubling. The evidence was, and by that I mean the evidence that was accepted as true by a jury that decided beyond a reasonable doubt that defendant's guilt, that he accomplished a violent rape by slamming the victim onto the floor and slammed her head on the floor until she lost consciously while he strangled her and the evidence also was that he began raping her as she was regaining consciousness. Medical evidence of loss of consciousness through strangulation was presented to the jury and accepted as true.

This [c]ourt also finds as an aggravating factor that the defendant did this while the child, then one year old, was sitting in the corridor. All of these factors demonstrate a depravity of heart that illustrates the danger that the defendant poses to society.

. . .

The [c]ourt also considers as an aggravating factor the impact on the victim that not only will be long lasting but continues to this day as the defendant's relatives in their disagreement with the verdict see fit to harass her because they disagree with the verdict.

Consistent with all of this is his lack of remorse, and by that I don't mean that he claims his innocence. He's got a right to do that even now. By that I mean the vilification of the witness in response to the allegations, which would lead a reasonable mind to conclude that that would make it okay in the defendant's mind.

So having considered all this, the sentence is intended to protect the public, in particular the victim, from further harm, while holding the defendant accountable and this [c]ourt finds as to the defendant's rehabilitative needs that it would require substantial incarceration to do so in any event.

N.T. Sent'g, 6/16/23, at 24-27.

Based on our review, we conclude the sentencing court properly considered all factors when imposing Appellant's sentence. It acknowledged its review of Appellant's pre-sentence report and placed on the record detailed

reasons for imposing concurrent sentences of 10 to 20 years' incarceration for the Rape and Aggravated Assault convictions, and a consecutive term of 5 to 10 years' incarceration for the Strangulation conviction. We conclude the court properly exercised its discretion.

Appellant makes no attempt to "establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." ***Summers***, 245 A.3d at 692-93. Accordingly, Appellant's challenge to the discretionary aspects of his sentence is without merit.

\* \* \*

In sum, we conclude sufficient evidence supports each of Appellant's convictions. Further, we decline to reweigh the evidence and conclude that the court did not abuse its discretion in denying Appellant's post-sentence motion based on his weight claim. Finally, we conclude that the court properly considered all sentencing factors and did not abuse its discretion in imposing an aggregate sentence of 15 to 30 years' imprisonment.

Judgment of Sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/17/2025

- 19 -