**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| JAIMIE RICE | : | |
| Appellant | : | No. 3192 EDA 2024 |

Appeal from the Judgment of Sentence Entered July 12, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at No(s): CP-51-CR-0005227-2023

BEFORE: PANELLA, P.J.E., DUBOW, J., and NICHOLS, J.
MEMORANDUM BY DUBOW, J.: **FILED SEPTEMBER 15, 2025**

Jaimie Rice ("Appellant") appeals from the judgment of sentence entered in the Philadelphia Court of Common Pleas following her open guilty plea to, *inter alia*, Third-Degree Murder. She contends that the court erred in denying her post-sentence motion to withdraw her plea and challenges the discretionary aspects of her sentence. After careful review, we affirm the judgment of sentence.

We glean the following relevant facts and procedural history from the trial court's opinion and the certified record. On August 20, 2021, Appellant, her paramour Anthony Green, and an unidentified man attacked Andres Lopez-Wyatt ("Victim") inside the Erie Candy Shop located in the Kensington section of Philadelphia. While they were punching and kicking the Victim, the unidentified man handed a firearm to Appellant. She hit the Victim with it and

the gun discharged a bullet into the Victim's head. He died three days later as a result. Surveillance cameras captured the entire incident on videotape.

On November 30, 2022, the Commonwealth arrested Appellant and charged her with murder, conspiracy, and three firearms offenses. Following the waiver of her ***Miranda***[1] rights, Appellant admitted that she shot the victim. She stated she did not know the name of the unidentified man.[2]

On May 7, 2024, five days before the scheduled trial date, the court held a hearing to discuss with Appellant and counsel the Commonwealth's plea offer of 17½ to 35 years' incarceration and the dismissal of two firearms offenses in exchange for Appellant's pleading guilty to third-degree murder and two other charged offenses. The court explained that Appellant had options, *i.e.*, (1) she could plead "open" so the court would continue sentencing for 8 weeks in order to decide on an appropriate sentence in light of the sentencing factors it must consider, (2) she could accept the plea offer of 17½ to 35 years, or (3) she could reject the offer and go to trial on the general murder charge, risking a first-degree murder conviction which would result in a mandatory life sentence. N.T., 5/7/24, at 4-5; ***see also id.*** at 8 (where court asks which offer Appellant wished to take: "[t]he one with the

---

[1] ***Miranda v. Arizona***, 383 U.S. 903 (1966).

[2] The Commonwealth also arrested Mr. Green and charged him with aggravated assault and conspiracy. He pled guilty and a court sentenced him to concurrent terms of 3 to 10 years' imprisonment. Tr. Ct. Op., 1/7/25, at 1 n.2.

time certain or the one in which I decide the sentence after I get more information from you"). The court then played the videotape showing Appellant and the others assaulting the Victim, and the unidentified man passing the gun to Appellant which then discharged into the Victim's head. Appellant agreed that the videotape accurately captured the incident.

The Commonwealth then presented the facts of the case to the court and Appellant agreed to the facts as recited by the prosecutor and admitted that she shot the Victim during the course of an assault. She then entered an open guilty plea to Third-Degree Murder, Conspiracy to Commit Third-Degree Murder, and Firearms Not to be Carried Without a License.[3]

Following the oral colloquy, the court recessed for Appellant and her attorney to complete the written plea colloquy. A short time later, Appellant and her counsel returned to the courtroom and handed up Appellant's written plea colloquy. The written plea colloquy included an understanding that in exchange for her guilty plea, the Commonwealth would recommend a "capped" aggregate sentence of 17½ to 35 years' incarceration, "which may be reduce[d] with cooperation." Written Plea Colloquy, dated 5/8/24,[4] at 3. Although not explicitly written, the parties understood that Appellant's

---

[3] 18 Pa.C.S. §§ 2502(c), 903, and 6106(a)(1).

[4] Although Appellant and her attorney dated the written plea colloquy May 8, 2024, the notes of testimony from the plea hearing indicate that the written plea colloquy was signed and provided to the court on May 7, 2024. ***See*** N.T. Plea Hr'g, 5/7/24, at 13.

cooperation included her providing information to the Commonwealth to identify and locate the unnamed assailant. The written plea colloquy also included Appellant's acknowledgment that the maximum sentence she could receive for third-degree murder was 40 years' incarceration. ***See id.*** at 2. The court accepted Appellant's open guilty plea and deferred sentencing pending a mental health evaluation and a pre-sentence investigation.

On July 12, 2024, the sentencing court held a hearing at which it reiterated the details of the crimes to which Appellant pled guilty, and discussed the information that it had received from its review of Appellant's mental health evaluation and the pre-sentence investigation report. N.T. Sent'g, 7/12/24, at 6-8. In addition, Appellant's counsel stated that the week prior to sentencing, he had provided the Commonwealth with the unidentified assailant's first name and first letter of his last name, but stated that no further information was available. ***Id.*** at 23-24. Counsel informed the court that Appellant's father was still working on establishing the unnamed assailant's identity and had told counsel that he would be at the sentencing hearing; however, the father did not appear at the sentencing hearing. ***Id.*** at 26-27. The sentencing court declined to continue the matter because the Victim's family had travelled from Michigan for the sentencing and stated to Appellant, "so you're getting your negotiations today [sic]." ***Id.*** at 28. Appellant did not object.

Following argument from counsel and impact statements from the Victim's family, the court sentenced Appellant to an aggregate 17½ to 35 years' incarceration.[5] Relevantly, the court informed Appellant that the sentence could be reduced on a motion for reconsideration filed within 10 days if she provided the Commonwealth with information identifying the unnamed assailant. ***Id***. at 29. The prosecutor added: "Just so the record is clear, [Appellant] has to come … into our office, provide all relevant information, including the full name, location, phone number, e-mail, social media, any and all information she has regarding that person," and "in addition, she will sign a memorandum of agreement that she will testify at that individual's preliminary hearing and/or trial." ***Id***. at 30. Appellant indicated that she understood the conditions. ***Id.***

Five days later, on July 17, 2024, Appellant's counsel sent an email to the court and prosecutor providing the unnamed assailant's first name, last name's first initial, and possible nicknames, as well as an intersection in Philadelphia's Frankford section where the assailant allegedly hung out.

On July 22, 2024, Appellant filed a post-sentence motion for reconsideration, asserting that the court failed to consider mitigating factors in sentencing Appellant, including Appellant's cooperation. On August 22,

---

[5] The court imposed 17½ to 35 years for Third-Degree Murder, concurrent terms of 10 to 20 years for Conspiracy to Commit Third-Degree Murder, and 1½ to 3 years for the firearms conviction.

2024, Appellant's counsel sent an email to the prosecutor, copying the court, informing him that Appellant's father was not cooperating, Appellant had no further information on the unnamed assailant, and the motion for reconsideration should be denied without a hearing. ***See*** N.T. Mot., 11/12/24, at 11-12 (where the court recites contents of plea counsel's 8/22/24 email). The court then withdrew plea counsel's appearance and appointed new counsel on August 30, 2024.

New counsel filed a motion to withdraw Appellant's guilty plea *nunc pro tunc*, claiming that Appellant did not knowingly and intelligently enter the plea because her prior counsel had allegedly given her incorrect advice, *i.e.*, that if Appellant provided the identifying information about the unnamed assailant "she would get a substantially reduced sentence and NOT the 'capped' sentence." *Nunc Pro Tunc* Mot. to Withdraw Guilty Plea, 10/30/24, at ¶ 6 (emphasis in original).

On November 12, 2024, the court held a hearing on both motions. In prefatory comments, the court acknowledged that the plea agreement did not include the conditions the prosecutor tacked on at the sentencing hearing. N.T. Mots., 11/12/24, at 7-8. The court also acknowledged plea counsel's July email that provided the information on the unnamed assailant. In response, the prosecutor argued that police investigators with extensive knowledge of the Frankford area were unable to verify any of the information provided and

stated, "we have no reason to believe that that information is valid or correct." ***Id***. at 10-11.[6]

Appellant testified that had plea counsel explained to her that she would be sentenced to 17½ to 35 years' incarceration after she had provided the information, she would not have entered into the open plea with the "cap." ***Id***. at 17-18. Appellant also testified her family was unable to give her any further information about the unnamed assailant but they did tell her "he's been locked up multiple times too." ***Id***. at 20. The court then questioned Appellant, noting her admission to the facts of the crime and her failure to object at sentencing when the prosecutor tacked on the conditions of cooperation that would have supported its subsequent recommendation for a reduced sentence.

Appellant's counsel argued that the plea was not knowing because plea counsel never explained that the identifying information she provided had to lead to the identification and arrest of the unnamed assailant and that she had to testify at his preliminary hearing and/or trial. ***Id***. at 22. Notably, the court offered a short continuance if counsel wished to present testimony from plea counsel. ***Id***. at 24, 25. The court, however, ultimately concluded it would not

---

[6] Although the court stated that "he was arrested," there was no discussion regarding who the court referred to and whether the information that Appellant provided led to the unnamed assailant's arrest so he could be charged in connection with this case. N.T. Mots., 11/12/24, at 9.

provide a continuance,[7] found that (1) the record was clear that Appellant fully understood the plea agreement, (2) "she has not provided any cooperation," and (3) that Appellant's "credibility is limited in [the court's] mind." N.T. Post-Sentence, 11/12/24, at 15, 25. The court then denied the motions.

Appellant timely appealed and filed a Pa.R.A.P. 1925(b) Statement. The court issued a Rule 1925(a) Opinion.

Appellant provides the following Statement of Questions Involved:

> 1. Whether the lower court abused its discretion by denying [Appellant's] post-sentence motion to withdraw her guilty plea, where the plea was not knowingly, voluntarily, and intelligently entered[?]
>
> 2. Whether the lower court erred by not allowing [Appellant] to withdraw her guilty plea, where the court did not adhere to the terms of the plea agreement[?]
>
> 3. Whether the lower court abused its discretion by not considering [Appellant's] background and mitigating evidence and failing to provide sufficient reasons on the record for the sentence[?]

Appellant's Br. at 6.

In her first issue, Appellant argues that her plea is "constitutionally invalid" and not entered knowingly, voluntarily, or intelligently because "[s]he did not fully understand the nature and consequences of her plea." ***Id***. at 19. She claims no one told her "about the specificity of the details about the

---

[7] Following its second offer to provide a continuance, the court realized that it had to decide the post-sentence motions to meet the 120-day deadline, e.g., by November 25, 2024, and, thus decided, it would not continue the matter. ***See*** N.T. Mot., 11/12/24, at 25-26.

unknown male that were necessary to earn a reduced sentence." ***Id***., at 20. She states "[t]his failure to inform her created a false impression about the level of cooperation demanded," and "[a]s a result she misunderstood the consequences of pleading guilty." ***Id***.[8] This argument merits no relief.

We review a challenge to the denial of a post-sentence motion to withdraw a guilty plea under an abuse of discretion standard. ***Commonwealth v. Gabra***, 336 A.3d 1052, 1056 (Pa. Super. 2025). "Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." ***Id.*** at 1056-57 (citation omitted).

To obtain relief on a post-sentence motion to withdraw a guilty plea, a defendant must prove that "manifest injustice would result if the court were to deny [her] post-sentence motion to withdraw [her] guilty plea." ***Id.*** at 1057 (citation omitted).

> Manifest injustice occurs when the plea is not tendered knowingly, intelligently, voluntarily, and understandingly. In determining whether a plea is valid, the court must examine the totality of circumstances surrounding the plea. Pennsylvania law presumes a defendant who entered a guilty plea was aware of what he was doing, and the defendant bears the burden of proving otherwise.

***Commonwealth v. Hart,*** 174 A.3d 660, 664-65 (Pa. Super. 2017) (internal citations and quotation marks omitted).

---

[8] Appellant has never asserted that she is innocent.

The law imposes a stricter standard for post-sentence withdrawal motions in order to balance "the tension ... between the individual's fundamental right to a trial and the need for finality in the proceedings." ***Commonwealth v. Gunter,*** 771 A.2d 767, 771 (Pa. 2001); ***see also Commonwealth v. Hvizda,*** 116 A.3d 1103, 1106 (Pa. 2015).

The burden of proving that the defendant entered the plea unknowingly, involuntarily, or unintelligently is on the defendant, for we presume that she was aware of what she was doing when she entered the plea. ***Gabra***, 336 A.3d at 1057. "Therefore, where the record clearly demonstrates that a guilty plea colloquy was conducted, during which it became evident that the defendant understood the nature of the charges against [her], the voluntariness of the plea is established." ***Id.*** (citation omitted). Further, "a defendant is bound by the statements [she] makes during [her] plea colloquy, and [she] may not assert grounds for withdrawing the plea that contradict statements made when [she] pled." ***Id.*** (citation omitted).

At the November 12, 2024 hearing on Appellant's motion to withdraw her plea, Appellant testified that she gave plea counsel the "information about the boy" and claimed that her plea counsel was subsequently unresponsive to her family's attempts to contact counsel, that she gave the same information about the unnamed assailant to her new counsel, and that had she known that she was going to get 17½ to 35 years' incarceration even if she provided the information, she "would not have entered into the open plea with the cap."

N.T. Mots., 11/12/24, at 17-18. Appellant acknowledged that she did not speak up at the sentencing hearing, and then stated that she signed the plea agreement because "[counsel] kept saying that if I take it to trial, I was going to get life." ***Id***. at 19. The court denied both motions. ***Id***. at 25-26.

Following our review, we conclude that the court did not abuse its discretion in denying Appellant's motion to withdraw her guilty plea because Appellant failed to make any effort to demonstrate that a manifest injustice would occur if the motion were not granted. The plea colloquy, both oral and written, demonstrate that Appellant entered her guilty plea knowingly and voluntarily. Moreover, the plea transcript reveals that Appellant and the court had extensive conversations about the plea, her exposure to decades, if not life, in prison if she were found guilty at trial, and her agreement to cooperate with the Commonwealth as part of her plea agreement. Further, the record demonstrates that she consulted with her counsel during the court's recess after she entered her oral plea, and that it was after those conversations that the plea was amended to include an agreement that her sentence would be "capped" at 17½ to 35 years' incarceration.

Appellant's argument fails to convince us that she did not enter the plea intelligently and fully aware of the consequences of her pleading guilty. In addition, she has failed to demonstrate that she suffered a manifest injustice as a result of the court's denial of her post-sentence motion. We, thus, conclude the court properly exercised its discretion in denying Appellant's

post-sentence motion to withdraw her guilty plea and for modification of her sentence.[9]

In her second issue, Appellant argues that the trial court violated the plea agreement because "during the oral plea colloquy, she explicitly rejected a plea bargain that involved a set, negotiated sentence." Appellant's Br. at 15-16. She acknowledges that "[i]n exchange for her guilty plea, the Commonwealth and lower court agreed that the court would decide the penalty," but nonetheless concludes that "the lower court deprived [her] of the benefit of the bargain she made upon pleading guilty" "when it imposed a negotiated. [sic]" ***Id***. at 16, 21-23. Appellant's argument is, among other things, waived.[10]

Our review of the sentencing and post-sentence motions transcripts reveals that Appellant failed to preserve this issue for appellate review. She did not object at her sentencing hearing that the court was depriving her of

---

[9] Appellant's argument—that she did not enter the plea intelligently because plea counsel did not explain the conditions that the prosecutor tacked on at her sentencing hearing that would support the Commonwealth not opposing a motion for reconsideration—implicates the stewardship provided by her counsel at sentencing, a claim she must raise in a timely petition for post-conviction relief to obtain review. ***See Commonwealth v. Holmes***, 79 A.3d 562, 576 (Pa. 2013) (affirming the general rule that "claims of ineffective assistance of counsel are to be deferred to PCRA review.").

[10] Significantly, Appellant chose to enter an open guilty plea, aware that the court could legally impose a sentence of up to 40 years' incarceration for third-degree murder. ***See*** Written Plea Colloquy, at 2.

the benefits provided in her plea agreement. Accordingly, her claim that the court deprived her of the benefit of her bargain is waived. ***See*** Pa.R.A.P. 302(a) ( "Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

In her third issue, Appellant challenges the discretionary aspects of her sentence. Appellant is not entitled to appellate review as of right. ***Commonwealth v. Roberts***, 133 A.3d 759, 774 (Pa. Super. 2016). Rather, an appellant challenging the discretionary aspects of her sentence must invoke this Court's jurisdiction by (1) preserving the issue at sentencing or in a post-sentence motion; (2) filing a timely notice of appeal; (3) including a Pa.R.A.P. 2119(f) statement within her appellate brief; and (4) raising a substantial question for our review. ***Commonwealth v. Tejada***, 107 A.3d 788, 797-98 (Pa. Super. 2015). Our review confirms that Appellant preserved her sentencing issue in a post-sentence motion, filed a timely appeal, and has included a Rule 2119(f) statement in her brief to this Court.

With respect to whether Appellant has presented a substantial question, we are mindful that "[a] substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Summers***, 245 A.3d 686, 692 (Pa. Super. 2021) (citation omitted). Generally, an allegation that the sentencing court

failed to consider certain mitigating factors does not raise a substantial question. ***Commonwealth v. McNabb***, 819 A.2d 54, 57 (Pa. Super. 2003).

In addition, when the sentencing court has the benefit of a pre-sentence investigation report, "we presume that [it] was aware of relevant information regarding the defendant's character and weighed those considerations along with any mitigating factors" when imposing the sentence. ***Commonwealth v. Sexton***, 222 A.3d 405, 422 (Pa. Super. 2019) (citation omitted).

Here, Appellant asserts that the sentencing court "transgressed" Section 9721(b) of our Judicial Code[11] by "failing to articulate any reasons for [Appellant's] sentence on the record" and argues that "there is no evidence that the lower court appropriately considered [Appellant's] mitigation evidence." Appellant's Br. at 26.

Significantly, Appellant does not assert that the sentence she received is "inconsistent with a specific provision of the Sentencing Code" or "was contrary to the fundamental norms which underlie the sentencing process." ***Summers***, 245 A.3d at 692. Moreover, our review of the sentencing transcripts reveals that the court acknowledged the pre-sentence

---

[11] 42 Pa.C.S. § 9721(b) provides that "the court shall follow the general principle that the sentence imposed should call for total confinement that is consistent with section 9725 (relating to total confinement) and the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant."

investigation report, which included the particulars of Appellant's upbringing, her struggles with drug addiction, her remorse, and her decision to enter the guilty plea to spare the Victim's family from a prolonged and painful trial. ***See*** N.T. Sent'g, 7/12/24, at 7-12. Accordingly, Appellant's argument is not only belied by the record but also fails to present a substantial question.

In sum, we conclude the trial court properly exercised its discretion in dismissing Appellant's post-sentence motions. Further, Appellant failed to invoke our jurisdiction to address the discretionary aspects of her sentence because she failed to present a substantial question. We, thus, affirm her judgment of sentence.

Judgment of Sentence affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/15/2025